914 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donna RODGERS, Plaintiff-Appellant,
v.
KAY DEE MANUFACTURING, A DIVISION OF ALPHABET, INC.,
Defendant-Appellee.
 No. 89-4011.
 United States Court of Appeals, Sixth Circuit.
 Sept. 28, 1990.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Donna Rodgers, appeals from the dismissal pursuant to Fed.R.Civ.P. 41(b) of her sex discrimination suit. Claiming that she had been discriminatorily discharged, the plaintiff filed suit against defendant, Kay Dee Manufacturing (Kay Dee or the Company), a division of Alphabet, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. At the close of the plaintiff's case-in-chief, the district court granted the defendant's motion to dismiss. On appeal, the plaintiff argues that the district court erred as a matter of law by granting the motion to dismiss because the plaintiff presented evidence of disparate treatment and because she was discharged contrary to the defendant's established policies. In the alternative, the plaintiff argues that the district court's findings were clearly erroneous. Because we determine that the district court applied the proper legal principles and that its findings were not clearly erroneous, we will affirm.
 
 I.
 
 2
 Rodgers worked for Kay Dee for 22 years, from 1966 to 1988. For the last seven and one-half years of her employment with Kay Dee, she worked as a supervisor in the Build Board Department. Although she had never been disciplined by the company for any reason, Rodgers was discharged by Kay Dee on August 8, 1988, for falsifying her time cards. She had been accused of working less than eight hours on days on which she had recorded eight hours.
 
 
 3
 The gravamen of Rodgers' complaint is that male employees who were accused by the Company of similar misconduct were not discharged. That is, she claims that she was given disparate treatment because of her gender, and that males who were similarly situated were given favorable treatment.
 
 
 4
 Kay Dee has an informal policy of overlooking minor discrepancies in employees' time cards. Its primary concern is that employees work a full eight-hour day. It is less of a concern that the hours reported are accurate, so long as the total hours recorded per day reflect the actual number of hours worked.
 
 
 5
 When violations of Company policy do occur, however, Kay Dee implements a progressive discipline policy. This policy is outlined in the Alphabet Employee Handbook:
 
 
 6
 Documented, progressive discipline applied impartially and consistently is essential in the fair and equitable handling of misconduct cases. Generally, progressive discipline consists of the following steps:
 
 
 7
 Step 1--First Offense--Counseling statement/verbal and/or written warning
 
 Step 2--Second Offense--Written warning
 
 8
 Step 3--Third Offense--Second written warning and final notice (could include unpaid days off)
 
 Step 4--Fourth Offense--Discharge
 
 9
 The severity of the offense, the employee's past history, and any mitigating or extenuating circumstances are considered prior to the application of any disciplinary action. For example, a serious first offense such as cheating on one's time card or disobeying a supervisor's direct order could lead to Step 3 or Step 4. Minor infractions are handled in the lower steps and progress into higher steps if further violations of any nature occur.
 
 
 10
 (App.272).
 
 
 11
 Until July 1988, Rodgers' scheduled shift hours at Kay Dee were from 7:00 a.m. to 3:30 p.m. To avoid respiratory problems caused by the soldering fumes in the plant, Rodgers received permission to change her hours to run from 5:00 a.m. to 1:30 p.m. She experienced fewer respiratory problems in the early morning hours than in the heat of the day.
 
 
 12
 After Rodgers began working these earlier hours, David Singrey, an hourly employee under her supervision, reported to the plant manager, Richard Emerine, that Rodgers had been reporting to work later than 5:00 a.m. In response to Singrey's complaints, Emerine ordered Dale Pentek, the third-shift employee, to monitor and record Rodgers' arrival times for the last week in July 1988. During the same time, Emerine monitored Rodgers' departure times. From this investigation, Emerine concluded that Rodgers was in fact arriving fifteen to thirty minutes later than 5:00 a.m., yet that she was leaving at 1:30 p.m., her scheduled departure time. However, Rodgers recorded an arrival time of 5:00 a.m. and a departure time of 1:30 p.m. for every day in question but one. On Tuesday, July 26, 1988, Rodgers recorded a departure time of 2:00 p.m., including one-half hour of casual (non-paid) overtime.
 
 
 13
 At trial, Sidney Gregory, who was Rodgers' assistant supervisor in the Build Board Department, testified that he saw the plaintiff in the plant at 3:30 p.m. on several occasions during the last two weeks in July.
 
 
 14
 On August 5, 1988, Rodgers was called in to meet with Emerine and with Virginia Ulam, the human resources manager. At this meeting, Rodgers denied that she had ever reported to work late. When confronted with the findings of the investigation, Rodgers stated that she must have worked later to make up the difference. At trial, Rodgers testified that she never denied starting late, but that she did state at the meeting that she may have started work late and worked later to make up the time. She testified that she told Emerine and Ulam that Sid Gregory could verify that she worked past 1:30 p.m. on the days in question.
 
 
 15
 Rodgers was suspended for three days without pay after this meeting. Emerine and Ulam, along with Christopher Hammon, the assistant plant manager, investigated Rodgers' claim that she had worked late to make up the time. They found no one who could substantiate her claims, and they decided to discharge her. She was notified of this decision at a meeting with Emerine, Ulam, and Hammon on August 10, 1988. Sidney Gregory replaced Rodgers as supervisor of the Build Board Department.
 
 
 16
 Rodgers claims that other employees who were similarly situated were not discharged by Kay Dee, and that this disparate treatment constitutes evidence that the company discriminated against her on the basis of her gender. Specifically, she claims that Singrey, Joe Baier, and Cloyce Griffin all engaged in conduct similar to the plaintiff but were not discharged.
 
 
 17
 Hourly employees at Kay Dee are required to punch a time card. Reporting for work late one day, Singrey had to record his time of arrival by hand. Company policy required that this handwritten entry be accompanied by a supervisor's initials. Instead of asking either Rodgers or Gregory to initial his time card, however, Singrey forged Gregory's initials. He was called in to meet with Ulam and Rodgers after this forgery was discovered. At this meeting, Singrey explained that he did not ask either Rodgers or Gregory to initial the card because he was having problems with his co-workers. Because there was no evidence that Singrey worked less than eight hours on the day in question, he was only suspended instead of discharged.
 
 
 18
 The supervisor in the Build Braid Department, Joe Baier, was also accused of falsifying his time card. The Company suspected that he was arriving to work late and leaving early, but recording an eight-hour day on his time card. Kay Dee monitored Baier's arrival and departure times for a two-week period, and Alton Meigs, a general supervisor, testified that he observed Baier leaving early on at least three occasions. He testified that he reported these observations to Hammon. However, when Baier was called in to meet with Ulam and Hammon, Meigs' observations were not discussed. Baier told Hammon and Ulam that he may have reported for work late, but that he always worked later to make up the time. Kay Dee gave Baier a written warning for his misconduct. The plaintiff considers the fact that Baier was not discharged to be evidence of disparate treatment.
 
 
 19
 Finally, Rodgers points to the Company's treatment of Cloyce Griffin, a maintenance supervisor. Griffin usually arrived late to work, but he also usually worked through his lunch hour and past the end of his shift. He has never been disciplined for his late arrivals, but he also has never been accused of putting in less than an eight-hour day.
 
 
 20
 In addition to the foregoing examples of the Company's treatment of male employees, the plaintiff testified about a conversation she had with Emerine several months before her discharge. He informed her of the Company's plans to consolidate Kay Dee's Build Board Department from three separate plants into the one at which Rodgers worked. She testified that Emerine told her that he did not think a woman could handle the job of supervising the expanded department, and that Kay Dee had hired a male engineer to supervise the department.
 
 
 21
 Emerine testified that he may have told Rodgers about the Company's plans to consolidate her department, but that he did not remember exactly what he said. He stated that there were no female engineers in the Eastern division of the Company, but that there were female engineers in the Western division. He stated that transfers between regions were possible. Plaintiff's counsel did not question Emerine about his alleged discriminatory statements.
 
 
 22
 During his testimony, Singrey stated that he had had differences of opinion with the plaintiff because she was no longer like one of the boys.
 
 
 23
 After her discharge, Rodgers filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), and she received a right-to-sue letter from the EEOC on February 10, 1989. The plaintiff then filed her complaint in federal district court, alleging violations of both Title VII and the Equal Pay Act, 29 U.S.C. Sec. 206(d). The plaintiff dismissed her claims under the Equal Pay Act at the commencement of trial.
 
 
 24
 At the close of the plaintiff's case-in-chief, the district court granted the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 41(b).[1] The district court issued Findings of Fact and Conclusions of Law as required by Fed.R.Civ.P. 52(a),[2] and concluded that Kay Dee did not discriminate against Rodgers on the basis of her gender. This appeal followed.
 
 II.
 
 25
 When reviewing the district court's findings of fact after a Rule 41(b) dismissal, we must apply the same standard as that for reviewing findings of fact made by a court following a full trial. Hersch v. United States, 719 F.2d 873, 877 (6th Cir.1983). We may not disturb the district court's findings unless they are clearly erroneous. Id. The clearly erroneous standard of review is highly deferential:
 
 
 26
 A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
 
 
 27
 United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 28
 The plaintiff argues that the district court's conclusion that she was not a victim of sex discrimination was not the result of a factual inquiry, but rather a mixed question of law and fact. Therefore, the plaintiff argues, it should be reviewed de novo. See Clevenger v. Oak Ridge School Bd., 744 F.2d 514 (6th Cir.1984).
 
 
 29
 Although the plaintiff is correct that the district court was bound to apply the proper legal principles to determine whether Kay Dee discriminated against her, see Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984), the ultimate question of whether there has been discrimination is a question of fact:
 
 
 30
 Because a finding of intentional discrimination is a finding of fact, the standard governing appellate review of a district court's finding of discrimination is that set forth in Federal Rule of Civil Procedure 52(a).... The question before us, then, is whether the Court of Appeals erred in holding the District Court's finding of discrimination to be clearly erroneous.
 
 
 31
 ... This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.
 
 
 32
 Anderson v. Bessemer City, North Carolina, 470 U.S. 564, 573 (1985). In this case, then, so long as the district court employed the proper legal principles, its factual findings must stand unless clearly erroneous.
 
 
 33
 Because Rodgers claims that she was discriminatorily discharged on the basis of sex, her claim falls into the "disparate treatment" category of Title VII cases. The analysis in disparate treatment cases proceeds in three stages. This analysis was set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and was refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981):
 
 
 34
 In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 35
 Id. at 252-53 (footnote and citations omitted). To establish a prima facie case of discriminatory discharge, the plaintiff must satisfy three elements: " ' that [s]he is a member of a class entitled to the protection of the Civil Rights Act, that [s]he was discharged without valid cause, and that the employer continued to solicit applications for the vacant position.' " Morvay v. Maghielse Tool and Die Co., 708 F.2d 229, 233 (6th Cir.), cert. denied, 464 U.S. 1011 (1983).
 
 
 36
 Despite the plaintiff's arguments to the contrary, the district court properly applied the above analysis in this case. Therefore, our only task is to determine whether the court's ultimate conclusion that Kay Dee did not discharge Rodgers because of her sex is clearly erroneous.
 
 
 37
 The court concluded that Rodgers was discharged for a valid reason, and that she thus failed to establish a prima facie case. The conclusion that Rodgers was discharged for falsifying her time cards was well-supported by the testimony and other evidence produced at trial, and we cannot say that the court's findings on this issue were clearly erroneous. Witnesses saw Rodgers arriving at the plant later than 5:00 a.m., and Emerine saw that she was not at the plant later than 1:30 p.m. Only one witness, Sid Gregory, testified that Rodgers worked later than 1:30 p.m. There is no evidence that Emerine or Ulam knew of Gregory's observations. As far as they knew, Rodgers was falsifying her time cards, and the court's conclusion that she was discharged for this reason is supported by the evidence.
 
 
 38
 The Company's policy of progressive discipline does not undermine the court's conclusion. Although most employee misconduct is disciplined in stages, the employee handbook does state that serious violations, like cheating on time cards, may result in immediate termination of employment.
 
 
 39
 The district court also found that even if Rodgers had established a prima facie case, she could not show that Kay Dee's legitimate, non-discriminatory explanation for her discharge was pretextual. To make this showing, Rodgers attempted to establish that male employees who were similarly situated to the plaintiff were treated differently than she was treated. McDonnell Douglas, 411 U.S. at 804. The district court found that Singrey, Baier, and Griffin were not similarly situated to the plaintiff. We agree with the court's findings. Singrey was suspended for forging his supervisor's initials on his time card, not for falsifying his time card to show more hours than he actually worked. Therefore, he was not similarly situated to the plaintiff.
 
 
 40
 In the case of Baier, the Company concluded that although he often reported to work late, he always worked late to make up the time. Emerine, Hammon, and Ulam concluded that there was no evidence that Baier ever worked less than eight hours in a day. Of course, the testimony of Alton Meigs indicates that Kay Dee had evidence that Baier did leave work early on some occasions, but his testimony is not conclusive, and the court was not required to credit it. The Company concluded that Baier did not falsify the number of hours he worked. Therefore, the district court correctly concluded that Baier was not similarly situated to the plaintiff.
 
 
 41
 Finally, the court's finding that Griffin was not similarly situated to the plaintiff was not clearly erroneous. Although Griffin often reported to work late, he often worked through lunch and beyond the end of his shift. He was never accused of working less than an eight-hour day, and he has never been disciplined by the defendant.
 
 
 42
 The plaintiff's testimony that Emerine allegedly stated that a woman could not handle the job of supervising an expanded Build Board Department also does not establish that she was the victim of sex discrimination. She presented no evidence to link these statements to her discharge, and her testimony was not corroborated. Because the trial judge had the opportunity to observe the demeanor and tone of witnesses, his credibility determinations are to be accorded even greater deference than his factual findings from other types of evidence. Anderson, 470 U.S. at 575. Even if we were to accept the plaintiff's testimony as to Emerine's statements as true, we would not be persuaded that the defendant discharged Rodgers because of her sex. The district court's conclusion that Rodgers was not a victim of sex discrimination is wholly supported by the evidence.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 Fed.R.Civ.P. 41(b) reads in pertinent part:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
 
 
 [2]
 Fed.R.Civ.P. 52(a) reads:
 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).