Geza MORVAY, Plaintiff-Appellant,

v.

MAGHIELSE TOOL AND DIE COMPANY, INC., a Michigan corporation, Defendant-Appellee.

Nos. 81-1512, 81-1798.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1983.

Decided May 27, 1983.

Rehearing and Rehearing En Banc Denied July 14, 1983.

Jeanne Mirer (argued), Detroit, Mich., for plaintiff-appellant.

Gary P. Skinner (argued), Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for defendant-appellee.

Before LIVELY and MARTIN, Circuit Judges, and MARKEY, Chief Circuit Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Geza Morvay sued Maghielse Tool and Die Company, his employer, for wrongful discharge in violation of the National Labor Relations Act, 29 U.S.C. § 185(a); for defamation in violation of Michigan law; and for national origin discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2. These charges were filed in two separate complaints but were combined for trial. The district court found the company liable for wrongfully discharging Morvay from its employ, and at a subsequent hearing awarded Morvay $58.85 in damages. The court dismissed the remaining charges. Morvay appeals from the court's ruling on damages, from the dismissal of his defamation and discrimination claims, and from the court's refusal to re-open the trial for additional testimony. We affirm the judgments of the court below.

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

The defendant is a Michigan corporation engaged in manufacturing metal stamping tools and dies. Morvay began working for the company as a sweeper in 1957, having recently immigrated from Hungary. From 1966 to 1970 Morvay participated in the company's machinist training program. He learned to operate a variety of machines but became especially adept at operating the small hydrotel, an hydraulic duplicator. Upon completing the training program, Morvay's primary job assignment was to run the hydrotel. However, he was assigned to other machines when work was slow or the hydrotel broke down. At the time of his discharge, Morvay was a skilled machinist, one grade below the highest skill level.

The events leading to the present litigation began on Friday afternoon, October 29, 1971, when Morvay's hydrotel broke down. Discussions involving Morvay, his foreman, the company president, and/or employee representatives ensued on Friday afternoon and Monday morning and afternoon. The focus of the discussions was Morvay's reassignment due to the hydrotel's breakdown. Morvay feared he would be permanently reassigned or, worse, laid off and sought reassurances that such would not be the case. Due to hot tempers, obstinacy, and communication difficulties the management was unable to satisfy Morvay that his reassignment would be temporary. Ultimately, Foreman Boger fired Morvay on Monday afternoon for insubordination and refusing to accept work assignments.

On Tuesday evening, November 2, 1971, members of the Shop Committee, the employee bargaining committee, visited Morvay at his home. They conveyed the defendant's offer to reinstate Morvay with full pay, benefits, and seniority. The reinstatement was conditioned upon Morvay's seeking psychiatric evaluation to enable the company management to identify and handle Morvay's "behavioral" difficulties. Morvay understood the offer but refused it.

The district court found the company liable for unfair labor practices because the company failed to follow its three-step disciplinary procedure. Except in cases of theft, sabotage, or physical assault, an employee can receive only a written reprimand for his first offense. The altercation over Morvay's work assignment was his first disciplinary offense, yet he was discharged. The court required the company to reimburse Morvay for the damages he suffered due to the wrongful discharge. The court determined that the defendant's offer to reinstate Morvay and his refusal limited its liability to wages for the hours he would have worked on November 1 and 2, $58.85. The court ruled that the offer, although conditioned upon Morvay's receiving psychiatric evaluation, was lawful because it was reasonably based on his past behavior.

On the issue of defamation, the court found that the company president had a qualified privilege to tell the Shop Committee and the Michigan Civil Rights Commission of Morvay's behavioral problems. The defendant acted in good faith and did not abuse its privilege. The court dismissed the plaintiff's Title VII claim because he failed to make out a prima facie case under *McDonnell Douglas* and *Burdine*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Also, the district court declined in a separate ruling to grant Morvay a new trial or re-open the trial for additional testimony. Morvay moved for this relief nearly a year after the trial had closed and nine months after the court had made factual findings and legal conclusions. The court reexamined its prior opinion and declined to grant the relief requested.

Morvay's first contention on appeal is that the district court erroneously concluded that the company's conditional offer to reinstate him terminated its damage liability. It is undisputed that an employer "having once offered reinstatement, is released from the back pay obligation from the date the offer was rejected." *NLRB v. Huntington Hospital, Inc.*, 550 F.2d 921, 924 (4th Cir.1977), *citing NLRB v. Betts Baking Co.*, 428 F.2d 156 (10th Cir.

1970). *See also NLRB v. Downslope Industries, Inc.,* 676 F.2d 1114 (6th Cir.1982); *Kenston Trucking Co., Inc. v. NLRB,* 544 F.2d 1165 (2d Cir.1976). The purpose of an offer to reinstate is to "undo the employer's wrong by restoring the employees to the position they would have occupied before the wrong occurred." *Ridgely Mfg. Co. v. NLRB,* 510 F.2d 185, 188 (D.C.Cir.1975). Therefore, an offer is insufficient to terminate back pay liability if it is conditional upon an employee's reapplying for his job; if it does not restore seniority or other benefits accrued by the employee; if the job which he is offered is temporary; if it is conditioned upon the employee relinquishing his unfair labor practice claim; if the employee has insufficient time to accept the offer; or if it is conditioned upon the union steward resigning. Respectively, *Shelly & Anderson Furniture Mfg. Co., Inc. v. NLRB,* 497 F.2d 1200 (9th Cir.1974); *Ridgely Mfg. Co., supra; Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB,* 547 F.2d 598 (D.C.Cir. 1976); *NLRB v. Midwest Hanger Co.,* 550 F.2d 1101 (8th Cir.1977); *NLRB v. Murray Products, Inc.,* 584 F.2d 934 (9th Cir.1978); and *Associated Truck Lines, Inc. v. NLRB,* 653 F.2d 241 (6th Cir.1981). However, reasonable conditions accompanying the offer do not invalidate it. *Ridgely Mfg., supra* (condition that employee follow rules and regulations of the company was unreasonable only because it was a pretext to suppress employee's union activities). And, finally, to terminate an employer's back pay liability, the reinstatement offer must be clear and actually communicated to the discharged employee. *Kenston Trucking Co., supra.*

The district court found as fact that the Maghielse company offered to reinstate Morvay to his former position, at his former wage, and with all his accrued seniority and benefits. It found that Morvay understood that the offer would restore him to the position he occupied before the wrong occurred. The court also found that Morvay exhibited an abnormal attachment to the hydrotel machine and an exaggerated and unjustified fear of being fired. Finally, the court found that the company wanted Morvay to see a psychiatrist because such a professional evaluation of Morvay's difficulties would enable his supervisors to interact better with him. As an appellate court, we must accept these factual findings because they are not clearly erroneous. Fed.R. Civ.P. 52(a).

■ Based upon the facts of this case we are compelled to conclude as valid the company's offer to reinstate Morvay, conditioned upon his submitting to a psychiatric evaluation. Given Morvay's past behavior and the company's unquestionable interest in maintaining a harmonious and efficient work environment the offer was reasonable. The purpose was not to demean Morvay but to coordinate his personal needs with the demands of his employment. Morvay was not asked to relinquish any claims he had against the company for its past conduct. Neither the acceptance of the condition nor the results of the evaluation would have altered Morvay's status or position in the company. Morvay's rejection of the offer tolled the company's back pay liability and the district court properly determined this liability to be for the one day only.

Because Morvay rejected the offer of reinstatement, we express no opinion on a lawful method of enforcing a condition that an employee submit to professional psychological evaluation. However, we recognize that an employer might render such a condition invalid by also limiting the employee's choice of doctors. Perhaps, an equitable method of selecting a doctor would be to have either the employer, the union, or the employee select a doctor and to grant the other party veto power.

■ Morvay's second contention on appeal is that the district court erred in dismissing his defamation claim under Michigan law. The issue here is whether the company acted in good faith and within the limits of qualified immunity when it communicated the conditions of Morvay's offer to others. The defendant's communication of the offer arose from a legitimate concern for Morvay's well-being and employment

related interactions. It was communicated only to members of the Shop Committee and to an employee of the Michigan Civil Rights Commission, both clearly within recognized limits of a qualified immunity. *See generally* 50 Am.Jur.2d, Libel & Slander, § 91. Morvay's contention of error, here, is without merit; the defamation claim was properly dismissed.

The third issue for consideration is whether the district court properly dismissed Morvay's national origin discrimination claim at the close of his proofs at trial. The Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), explained that a Title VII plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of employment discrimination. *See also United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The three elements necessary to establish a *prima facie* case of discriminatory discharge were specifically enumerated by this court in *Potter v. Goodwill Industries,* 518 F.2d 864 (6th Cir.1975). A plaintiff must show "[1] that he is a member of a class entitled to the protection of the Civil Rights Act, [2] that he was discharged without valid cause, and [3] that the employer continued to solicit applications for the vacant position." *Id.* at 865. Failure to prove any one of these elements by a preponderance of the evidences mandates a dismissal of the plaintiff's suit.

The record in the present case reveals that Morvay failed to make out a *prima facie* case of discriminatory discharge due to his national origin. Morvay did show that he was a native Hungarian entitled to the protection of the Civil Rights Act. However, his case fails after that showing. Morvay was not discharged without valid cause. The district court found he was discharged for insubordination and refusal to cooperate; if not for the company's three step reprimand policy, his behavior would have justified his termination. Finally, there is no evidence in the record that the company solicited applications for the position Morvay vacated. The defendant's record of hiring, training, and promoting Morvay and another Hungarian native belies any suggestion that the defendant was biased against Morvay because of his Hungarian ancestry. Because Morvay did not make out a *prima facie* case, we again conclude that the district court acted properly in dismissing the Title VII national origin discrimination claim.

The final issue on appeal is whether the district court abused its discretion in denying Morvay's motion for a new trial or to re-open the trial for additional testimony. Because the court had rendered a decision on every element of the plaintiff's case except damages, the court properly treated the motion to re-open as a motion for a new trial. Fed.R.Civ.P. 59. We agree with the court that there were no grounds for granting a new trial. Morvay failed to demonstrate manifest errors of law or fact or newly discovered evidence. A second trial was not warranted merely because Morvay hoped to do better with a new lawyer. The district court did not abuse its discretion in denying plaintiff's motion. *Cross v. Thompson,* 298 F.2d 186, 187 (6th Cir.1962).

For the foregoing reasons, each aspect of the judgment below is affirmed.