James **CRIPPS**, Plaintiff,

v.

**UNITED BISCUIT OF GREAT BRITAIN d/b/a Keebler Company**, Defendant.

No. CIV–3–89–0001.

United States District Court, E.D. Tennessee, N.D.

Oct. 31, 1989.

David A. Burkhalter, II and Perry H. Windle, III, Knoxville, Tenn., and Robert Ogle, Sevierville, Tenn., for plaintiff.

William A. Blue, Jr., Constangy, Brooks & Smith, and Edward Katze, Constangy,

Brooks & Smith, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is an action by the plaintiff James Cripps against his former employer, United Biscuit of Great Britain (Keebler) for alleged age discrimination and harassment pursuant to 29 U.S.C. §§ 621, *et seq.* (ADEA); he also asserts a pendent claim under the Tennessee Human Rights Act, T.C.A. §§ 4–21–101, *et seq.* The defendant Keebler has filed a motion for summary judgment [docs. 5, 5A] on the grounds (1) that the plaintiff cannot recover compensatory or punitive damages under either 29 U.S.C. §§ 621, *et seq.* or T.C.A. §§ 4–21–101, *et seq.*, (2) that a federal court should not exercise pendent jurisdiction over this State claim, and (3) that the plaintiff's unqualified rejection of the defendant's unconditional offer of reinstatement waived any right to equitable relief that he may have had. The plaintiff has filed a response [docs. 7, 7A]. Both parties have filed supplemental briefs [docs. 8, 9, and 10]. The motion is now ripe for disposition.

Mr. Cripps was born on October 26, 1929, and was hired by the defendant in about 1953. [Cripps deposition at p. 6.] During the years of his employment, he received several promotions. In 1984, he agreed to train a younger man to become a distribution center manager. [*Id.*, at pp. 14–15.] Donald W. Havens, born July 31, 1952, was the individual whom the plaintiff agreed to train. [Havens deposition at pp. 4 and 29.] By 1986, the plaintiff alleges that he realized that Mr. Havens was being groomed for his position. [Cripps deposition at pp. 14–15.] On May 20, 1986, the defendant's area manager made the first inquiry about the possibility of the plaintiff's retirement. The plaintiff received a poor evaluation at that time. [*Id.*] Conflicts began to develop with Mr. Havens and allegedly the plaintiff's superiors made repeated inquiries about his retirement. [*Id.*, at p. 24.] The plaintiff testified in his deposition that he was subjected to deteriorating working conditions during the period starting about 1986 until his resignation in 1988. [*Id.*, at pp. 24 and 31.]

Documentary evidence submitted with the plaintiff's response to the motion for summary judgment does reflect a continuing conflict between Mr. Havens and the plaintiff. [*E.g.*, doc. 7A, exs. 2, 3, 4, 5, 7, 8, 10, and 11; *see also* doc. 9, ex. 2.] Critical comments concerning the plaintiff's management style appear in several documents. [*Id.*, exs. 6, 9, 10, and 12.] At least one document refers to the plaintiff's retirement date and to Mr. Havens' assuming his responsibilities. [*Id.*, ex. 12 at p. 9.] According to the plaintiff, these documents indicate the kind of harassment he endured during his employment, which eventually forced him to retire and which allegedly increased after the filing of his charges of age discrimination on June 28, 1988 [doc. 5A, ex. 2], following the announcement of his retirement on June 8, 1988, and resulting in the subsequent filing of an harassment charge as well on October 18, 1988. [Doc. 7A, ex. 13; doc. 5A, ex. 1; Cripps deposition at pp. 29, 47, 49, 150–151, and 156; Havens deposition at pp. 107–108.]

During the pendency of administrative proceedings before the Tennessee Human Rights Commission (THRC), Keebler offered to reinstate the plaintiff to his former position at his previous salary and benefits. [Doc. 5A, exs. 3 and 4; Cripps deposition at pp. 149–150.] Mr. Cripps testified at his deposition that he refused this offer because he believed his working conditions would remain unacceptable. [Cripps deposition at pp. 150, 156.] Mr. Cripps also stated that he met informally with a representative of Keebler on October 5, 1988, and discussed the reasons he was leaving the company but the offer of reinstatement itself was not discussed, and he did not make any counter offer concerning the conditions on which he would accept reinstatement. [Cripps deposition at pp. 161–164.] A letter from a THRC official, dated October 11, 1988, states that the agency attempted to resolve the dispute informally "by communicating the requested conciliation terms of the complainant to the respondent, and further transmitting any

counter proposals which may have arisen. However, no mutually agreeable terms have been reached at this point." [Doc. 5A, ex. 4.]

### 1. *Scope of Recoverable Damages*

 The plaintiff has brought this action under both federal and State age discrimination statutes.[1] The plaintiff has conceded that under federal law, compensatory damages for pain and suffering cannot be recovered. [Doc. 5A, at p. 3.] *See, e.g., Hill v. Spiegel, Inc.,* 708 F.2d 233, 235–236 (6th Cir.1983). Under 29 U.S.C. § 626(b), however, "liquidated damages shall be payable only in cases of willful violations of this chapter." *See also Marchant v. Schenley Industries, Inc.,* 572 F.Supp. 155, 159–160 (M.D.Tenn.1983). Whether the defendant acted willfully is a question for the jury.

Regardless, the plaintiff contends that under the Tennessee Human Rights statute, T.C.A. §§ 4–21–101, *et seq.,* he is entitled to compensatory damages pursuant to T.C.A. § 4–21–311. The defendant contests the plaintiff's construction of the Tennessee statute, which provides that a successful plaintiff is entitled "to recover the actual damages sustained by him or her ... all of which shall be in addition to any other remedies contained in this chapter." The defendant relies on several federal cases reaching the conclusion that this language should be construed to permit the same scope of remedies as provided by the federal statute. In particular, the defendant cites *Shirley v. Brown and Williamson Tobacco Company,* 608 F.Supp. 78 (E.D.Tenn.1984), in which the district court concluded that the Tennessee legislature intended that the Human Rights Act provide the same remedies as federal civil rights legislation. *Id.,* at 78–80.

*Shirley* was decided in 1984, prior to two decisions in Tennessee courts regarding the Human Rights Act and prior to a recent amendment of that Act.[2] In an unpublished opinion of the Tennessee Court of Appeals, *Taff v. Media General Broadcast Services, Inc.,* 1986 WL 12240 (Shelby Equity no. 32, slip op., Tenn.App., November 3, 1986), which the defendant contends is not controlling because it is unpublished, the western section of that court concluded that the phrase actual damages means compensatory damages. Slip op. at pp. 7–9. More importantly and more recently, the Tennessee Supreme Court observed in *Plasti–Line, Inc. v. Tennessee Human Rights Commission,* 746 S.W.2d 691 (Tenn. 1988), that "[n]either the administrative remedies nor those provided in direct court actions are limited to common-law unliquidated damages." *Id.,* at 693.

Clearly, the actual damages language was given its most natural and obvious construction by the Supreme Court in *Plasti–Line, Inc.,* which is required by the rules of statutory construction utilized in Tennessee, *e.g., Neff v. Cherokee Insurance Company,* 704 S.W.2d 1, 2–3 (Tenn. 1986). Implicit in *Plasti–Line, Inc.* is the recognition that T.C.A. § 4–21–306, under which administrative remedies include "damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice," T.C.A. § 4–21–306(8), should be construed in *pari materia* with § 4–21–311, which expressly provides that the remedies "shall be in addition to any other remedies contained in this chapter." In other words, a complainant may obtain the same remedies in a direct action as would have been obtainable through the administrative process. *See Hoge v. Roy H. Park Broadcasting of Tennessee, Inc.,* 673 S.W.2d 157, 160 (Tenn.App.1984). In this regard, a recent amendment to § 4–21–311 (Supp.1989) makes this construction manifestly explicit, significantly clarifying legislative intent concerning the scope of remedies: "In addition to the remedies set forth in this section, all remedies

---

1. The plaintiff asserts *no serious contention* that punitive damages may be recovered under either federal or State law; the Court, therefore, does not address this issue and grants the defendant's motion on this issue.

2. Similarly, many of the other federal cases relied on by the defendant were decided prior to the recent developments in Tennessee law governing the construction of the Human Rights Act.

described in section 4–21–306 shall be available in any such lawsuit."

Recently, this Court adhered to this construction of the Tennessee Human Rights Act in *Olivia Hannah v. Pitney Bowes, Inc.*, no. 3–88–902 (E.D.Tenn., April 21, 1989, Jordan, J.). Observing that although the underlying policies of the Human Rights Act are those embodied in comparable federal civil rights laws, "the Tennessee Human Rights Act is not a mirror image of the federal statute." *Id.*, at p. 4. Given the recent amendment to T.C.A. § 4–21–311 and the decision of the Tennessee Supreme Court in *Plasti–Line, Inc.*, as well as that of the Tennessee Court of Appeals in *Taff*, this Court finds that it is bound by these authorities. That federal cases do not control the disposition of this issue is axiomatic. *E.g., Bagwell v. Canal Insurance Company*, 663 F.2d 710, 712 (6th Cir.1981).

■ Consequently, with all due respect for those federal courts that have reached a contrary conclusion, this Court is duty-bound to follow what is now the clearly expressed law of Tennessee that actual damages include compensatory damages as provided by T.C.A. §§ 4–21–306 and 4–21–311.[3] Moreover, other federal courts have reached an identical conclusion on the same scope of damages issue. *E.g., Ridenour v. Montgomery Ward and Company*, 786 F.2d 867, 869 (8th Cir.1986) (construing similar language in the Iowa Civil Rights Act).

### 2. *Exercise of Pendent Jurisdiction*

■ The defendant argues that if the actual damages language is construed to allow recovery of more damages than permitted under federal law, this Court should decline to exercise pendent jurisdiction because the adjudication of the "pendent claim ... would increase the plaintiff's recovery beyond the maximum limits ... in the federal Act." *Shirley, supra*, at 80

(citation omitted). *See also Pascoe v. Hoyle Lowdermilk, Inc.*, 614 F.Supp. 546, 547–548 (D.Colo.1985). The defendant also relies on 29 U.S.C. § 633(a), which provides that "[n]othing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action." By its own terms, however, 29 U.S.C. § 633(a) refers to State administrative and court actions by State agencies and the Court does not construe it to preclude a pendent claim brought in federal court.

Nevertheless, in *Pandis v. Sikorsky Aircraft Division*, 431 F.Supp. 793, 796 (D.Conn.1977), a district court found that the practical effect of this provision, which is to stay any State action in a State forum, "is a persuasive indication that it would be inappropriate for a federal court considering a federal ADEA claim to assume pendent jurisdiction over a cause of action grounded in State law," *id.*, at 796, based on that Court's conclusion that Congress intended the federal remedy to take precedence. Another district court in *Hannon v. Continental National Bank*, 427 F.Supp. 215, 218 (D.Colo.1977), declined to accept a pendent tort claim in an ADEA case because it "would circumvent the scope of the remedies available under the federal cause of action, and subvert the policies of excluding damages for emotional distress under the ADEA."

At least one Circuit Court of Appeal has addressed the precise issue of whether a federal court may exercise pendent jurisdiction over a State age discrimination claim in conjunction with an ADEA claim. Noting without deciding that damages recoverable under the ADEA have been limited in other circuits, the Ninth Circuit in *Kelly v. American Standard, Inc.*, 640 F.2d 974, 983–984 (9th Cir.1981), upheld a jury award of compensatory damages under the Wash-

---

**3.** In *Hannah v. Pitney Bowes, Inc., supra*, this Court previously rejected the same limited construction of the actual damages language as proposed by the defendant in the case *sub judice*, refusing to follow the conclusion of another

federal district court in *Belcher v. Sears, Roebuck and Company*, 686 F.Supp. 671 (M.D.Tenn. 1988), because that Court had not considered these recent developments.

ington State Anti–Discrimination law,[4] finding no reason not to permit recovery under the State statute because "[t]he nature and amount of recovery are questions of fact" that may be submitted to the jury. In *Cancellier v. Federated Department Stores*, 672 F.2d 1312 (9th Cir.1982), citing *Kelly, supra*, the same Circuit held that "[t]he ADEA does not preempt the award of tort damages on pendent State claims" because such damages "did not duplicate ADEA relief." *Id.*, at 1318. The court recognized that an argument existed against entertaining such State claims in ADEA cases but found that "it is for Congress ... to decide whether State ... remedies trench too closely on the federal scheme." *Id.* The court did observe, however, that the exercise of pendent jurisdiction over State law claims could be inappropriate "where the trial judge finds that the State issues predominate in terms of the comprehensiveness of the remedy sought, or that there is a sufficient likelihood of jury confusion ... to justify separating State and federal claims." *Id.* (citations omitted). As previously cited, in *Ridenour v. Montgomery Ward and Company, supra,* the Eighth Circuit also approved a verdict under both the ADEA and a State Anti–Discrimination statute but did not otherwise address this issue.

The Court is of the opinion that the exercise of pendent jurisdiction over the State discrimination claim is not inappropriate in this case. The remedies are not wholly duplicative and Congress has not expressly precluded such a recovery under the ADEA. *See generally Simpson v. Alaska State Commission for Human Rights,* 423 F.Supp. 552 (D.Alaska 1976), *affirmed* 608 F.2d 1171 (9th Cir.1979). The determination of the scope and amount of damages, if any, recoverable by the plaintiff is for the jury. The Court will instruct the jury carefully and the case will be submitted to the jury for special verdicts on the federal and State law claims pursuant to Rule 49(a), Fed.R.Civ.P. *See DuPont v. Southern Pacific Company,* 366 F.2d 193 (5th Cir.1966). The State law claim arises out of the same facts and will not predominate the trial or require substantially more evidence than would otherwise be presented on the federal claim.

### 3. *Availability of Equitable Relief*

■ The defendant next contends that the plaintiff has waived any right to equitable relief under the ADEA because he rejected an unconditional offer of reinstatement during the administrative conciliation process. The defendant relies on *Ford Motor Company v. Equal Employment Opportunity Commission,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), and several other federal cases. The plaintiff responds that a question of fact is presented as to whether a reasonable person would have accepted the defendant's offer under the circumstances.

In applying *Ford Motor Company,* Circuit Courts of Appeals have held that " '[t]he failure to accept an offer of reinstatement does not automatically terminate an employee's right to relief.' " *Giandonato v. Sybron Corp.,* 804 F.2d 120, 124 (10th Cir.1986) (citation omitted). The trial court is to consider the circumstances under which any such offer is made. *Id.* The inquiry is essentially the same in the Sixth Circuit under *Morvay v. Maghielse Tool and Die Company, Inc.,* 708 F.2d 229 (1983). *Morvay* makes it abundantly clear that the Court should fully consider the facts and circumstances of any offer of reinstatement and of the plaintiff's refusal before concluding that a plaintiff has forfeited any part of the ADEA remedy. *Id.,* at 231–232.

Moreover, some courts have included as a relevant circumstance in this inquiry the working conditions that prevailed prior to the employee's termination and whether the plaintiff suffered any harassment as a result of the filing of an administrative discrimination charge. *E.g., O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 574 F.Supp. 214, 221 (N.D.Ga.1983). A reasonable rejection of an offer of reinstatement

---

**4.** The Washington statute used similar actual damages language to that in the Tennessee statute and was construed to permit recovery of compensatory damages.

does not preclude equitable relief under the ADEA. *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808–809 (8th Cir. 1982). In *Fiedler*, the Eighth Circuit observed that whether the plaintiff acted as a reasonable person in rejecting an offer of reinstatement was a jury question. *Id.* Similarly, the Ninth Circuit has held that "the reasonableness of mitigation efforts ... is a question of fact" to be submitted to the jury. *Ortiz v. Bank of America National Trust and Savings Association*, 852 F.2d 383, 387 (9th Cir.1988). In *Ortiz*, the court observed that the trial court "did not err in refusing to apply *Ford Motor Company* inflexibly in a case where the evidence showed special circumstances." *Id.*

In the present case the plaintiff has presented sufficient evidence to raise a jury question about the reasonableness of his decision to reject the defendant's offer of reinstatement. Further, the record is not clear that no negotiations whatsoever between the parties occurred regarding the offer of reinstatement. The letter of October 11, 1988, from the THRC to the defendant indicates that some negotiations may have taken place but that no agreeable terms of reinstatement could be reached between the parties. Clearly, a question of fact is presented.

Accordingly, the Court ORDERS:

1. That the defendant's motion for summary judgment [docs. 5, 5A] is GRANTED IN PART and the plaintiff's claims for compensatory and punitive damages under 29 U.S.C. §§ 621, *et seq.* and for punitive damages under T.C.A. §§ 4–21–101, *et seq.* are DISMISSED; and

2. That the defendant's motion for summary judgment is DENIED IN PART based on the Court's conclusions that the plaintiff may attempt to recover nonduplicative compensatory damages as defined by T.C.A. §§ 4–21–101, *et seq.*, on his pendent claim and that the availability of equitable relief under 29 U.S.C. §§ 621,

*et seq.* is a question of fact in this case.