Douglas T. ENGLAND

v.

**FLEETGUARD, INC., and Cummins Engine Company, Inc.**

No. 2:94–0052.

United States District Court,
M.D. Tennessee,
Northeastern Division.

March 6, 1995.

Ronald C. Koksal, Butler, Vines & Babb, Knoxville, TN and Jon Edward Jones, Jones & Patterson, Cookeville, TN, for plaintiff.

William N. Ozier, Bass, Berry & Sims, Nashville, TN, for defendants.

### *MEMORANDUM*

MORTON, District Judge.

### I. INTRODUCTION

Plaintiff has brought suit against Fleetguard, Inc., and its parent corporation, Cummins Engine Company. Plaintiff alleges that he was terminated because of honestly held religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, as amended, 42 U.S.C. § 1981a (1991) ("Title VII"), and in violation of the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. 4–21–101 et seq. Plaintiff

also alleges that defendants retaliated against him for filing a complaint of discrimination, in violation of Title VII and the THRA.

A pure question of law regarding punitive damages has arisen in this case. Both parties agree that under federal law plaintiff can recover a maximum of $300,000 for future pecuniary losses, compensatory damages and punitive damages. 42 U.S.C. § 1981a(b)(3) (1991). The question before the court, however, is the extent to which punitive damages are available under state law. The defendant has moved to dismiss plaintiff's claim for punitive damages under the THRA, arguing that punitive damages are not recoverable under that statute. The plaintiff maintains that punitive damages are available under the THRA. In addition, the plaintiff seeks to amend his complaint to add a common-law claim for retaliatory discharge pursuant to *Clanton v. Cain–Sloan Company*, 677 S.W.2d 441 (1984), and its progeny, under which punitive damages are available.

For the reasons set forth below, this court holds that punitive damages are not recoverable under applicable provisions of the THRA. Tenn.Code Ann. §§ 4–21–306, 4–21–311 (1994). The court further holds that under state law the statutory remedies embodied in the THRA are exclusive in cases grounded in religious discrimination. Therefore, the plaintiff may not amend his complaint to add a common-law claim of retaliatory discharge.

## II. DISCUSSION

### A. *The Tennessee Human Rights Act*

#### 1. *Original language*

The THRA, enacted by the Tennessee General Assembly in 1978, prohibits discrimination in employment, public accommodations and housing on the basis of race, color, creed, religion, sex or national origin. One of its purposes is to execute within Tennessee "the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972 ... and the Age Discrimination in Employment Act of 1967." Tenn.Code Ann. § 4–21–101(a)(1).

Part 4 of the THRA addresses employment-related discrimination. It provides, in part:

> **4–21–401. Employer Practices.**—(a) It is a discriminatory practice for an employer to:
>
> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; or
>
> (2) Limit, segregate or classify an employee or applicants for employment in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

Tenn.Code Ann. § 4–21–401. The THRA also prevents retaliation. Part 3 of the THRA provides in part:

> **4–21–301. Discriminatory practices.**—It is a discriminatory practice for a person or for two (2) or·more persons to:
>
> (1) Retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter.

Tenn.Code Ann. § 4–21–301.

The THRA provides two ways in which a victim of employment discrimination and retaliation can proceed. First, a victim may file an administrative complaint with the Tennessee Human Rights Commission within 180 days of the alleged discriminatory practice. Tenn.Code Ann. §§ 4–21–302(a), 302(c), 307. If a victim chooses the administrative route, the Commission conducts an investigation, holds a hearing and issues an order containing findings of fact and its conclusion as to whether the respondent has engaged in a discriminatory practice. Tenn.Code Ann. §§ 4–21–304, 305. If the Commission concludes that discrimination occurrèd, it may order "such affirmative action as in the judg-

ment of the commission will carry out the purposes of this chapter." Tenn.Code Ann. § 4–21–305(b).

Section 306 of the THRA enumerates specific remedies that the Commission has power to order in the event it makes a finding of discrimination. The 1978 version of that section read:

4–21–306. **Remedies.**—(a) Affirmative action ordered under this section may include, but is not limited to:

(1) Hiring, reinstatement or upgrading of employees with or without back pay. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable;

(2) Admission or restoration of individuals to union membership, admission to, or participation in, a guidance program, apprenticeship, training program, on-the-job training program, or other occupational training or retraining program, and the utilization of objective criteria in the admission of individuals to such programs;

(3) Admission of individuals to a place of public accommodation, resort or amusement;

(4) The extension to all individuals of the full and equal enjoyment of the advantages, facilities, privileges and services of the respondent;

(5) Reporting as to the manner of compliance;

(6) Posting notices in conspicuous places in the respondent's place of business in form prescribed by the commission and inclusion of such notices in advertising material;

(7) Payment to the complainant of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and cost, including a reasonable attorney's fee; and

(8) Such other remedies as shall be necessary and proper to eliminate all the discrimination identified by the evidence submitted at the hearing or in the record.

(b) The commission may publish, or cause to be published, the names of persons who have been determined to have engaged in a discriminatory practice.

Tenn.Code Ann. § 4–21–306.[1]

A second way a victim of discrimination can proceed under the THRA is by bringing a civil cause of action in chancery court. Tenn.Code Ann. § 4–21–311. Claimants choosing the judicial route as opposed to administrative remedies are governed by section 311 of the THRA, which originally provided:

4–21–311. **Additional Remedies Preserved.**—Any person deeming himself or herself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery court to further enjoin violations, and to recover the *actual damages* sustained by him or her, together with the cost of the lawsuit, including a reasonable fee for his or her attorney of record, *all of which shall be in addition to any other remedies contained in this chapter.*

Tenn.Code Ann. § 4–21–311 (emphasis added).

Tennessee courts have interpreted the term "actual damages" in section 311 in different ways. In *Belcher v. Sears, Roebuck & Co.,* 686 F.Supp. 671 (M.D.Tenn.1988), for example, Judge Higgins held that "actual damages" did not include compensatory damages for emotional injuries such as serious embarrassment and humiliation. 686 F.Supp. at 673. Relying on *Shirley v. Brown and Williamson Tobacco Co.,* 608 F.Supp. 78 (E.D.Tenn.1984) and *Graham v. Holiday Inns, Inc.,* No. 85–2431, 1986 WL 15783 (W.D.Tenn.1986), Judge Higgins concluded that the Tennessee Legislature did not intend to afford claimants who pursued the judicial route the "full array" of damages available to those who pursued the administrative route. 686 F.Supp. at 674.

---

**1.** Section 306 was subsequently amended in 1992 to add a ninth enumerated remedy available to the Commission in cases involving discriminatory housing practices. This amendment authorizes the Commission to order a respondent guilty of discriminatory housing practices to pay a civil penalty of $10,000, $25,000 or $50,000. T.C.A. § 4–21–306(a)(9) (1994).

Other courts, however, have held that "actual damages" is synonymous with compensatory damages, so as not to differentiate between the judicial and administrative routes with regard to the damages recoverable. *Cripps v. United Biscuit of Great Britain,* 732 F.Supp. 844, 846 (E.D.Tenn.1989); *Taff v. Media General Broadcast Services, Inc.,* No. 32, 1986 WL 12240 (Tenn.App. November 3, 1986). The *Cripps* court concluded that compensatory damages were recoverable under the original version of section 311 irrespective of how one interpreted· "actual damages," because the remedies enumerated in section 311 were merely "in addition to any other remedies contained in this chapter." Tenn.Code Ann. § 4–21–311. The *Cripps* court stated:

> [Section] 4–21–306, under which administrative remedies include "damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice," ... should be construed in *pari materia* with § 4–21–311, *which expressly provides that the remedies "shall be in addition to any other remedies contained in this chapter."* In other words, a complainant may obtain the same remedies in a direct action as would have been obtainable through the administrative process.

*Cripps,* 732 F.Supp. at 846 (emphasis added). This court agrees with the reasoning in *Cripps,* i.e., that the General Assembly intended the remedies in § 4–21–311 to be "in addition to" those listed in § 4–21–306 for claimants who pursued the judicial route of enforcement of the THRA. Although the General Assembly's intent seems clear, the "in addition to" language of § 4–21–311 was ignored in *Belcher, Shirley* and *Graham.*

### 2. *The 1989 amendment*

In 1989, the Tennessee General Assembly amended § 4–21–311 to make the construction of the "in addition to" language manifestly explicit. The General Assembly added the following language at the end of § 4–21–311:

> In addition to the remedies set forth in this section, all remedies described in Section 4–21–306 shall be available in any such lawsuit. The filing of a civil cause of action in chancery court under this section shall supersede any complaint or hearing before the commission concerning the same alleged violation; and any such administrative action shall be closed upon such filing.

Tenn.Code Ann. § 4–21–311 (1989). This amendment made clear that claimants who pursued a judicial action, like those who chose to pursue an administrative complaint, enjoyed the remedies enumerated in § 4–21–306. The amendment "essentially abrogated the rationale of the *Belcher* court." *Harman v. Moore's Quality Snack Foods,* 815 S.W.2d 519, 522 (Tenn.App.1991).

### 3. *The 1991 amendment*

In 1992, the Tennessee General Assembly revamped § 4–21–311 a second time. It now reads:

> **4–21–311. Additional remedies preserved.**—Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery court. In such an action the court may issue any permanent or temporary injunction, temporary restraining order, or any other order and may award to the plaintiff actual damages sustained by such plaintiff, together with the costs of the lawsuit, including a reasonable fee for the plaintiff's attorney of record, all of which shall be in addition to any other remedies contained in this chapter. *In cases involving discriminatory housing practices, the court may award punitive damages to the plaintiff, in addition to the other relief specified in this section and this chapter.* In addition to the remedies set forth in this section, all remedies described in § 4–21–306, except the civil penalty described in § 4–21–306(a)(9), shall be available in any lawsuit filed pursuant to this section. A civil cause of action under this section shall be filed in chancery court within one (1) year after the alleged discriminatory practice ceases, and any such action shall supersede any complaint or hearing before the commission concerning the same alleged violations, and any such administrative action shall be closed upon such filing.

Tenn.Code Ann. § 4–21–311 (1994) (emphasis added). The most noteworthy aspect of the 1992 amendment to § 4–21–311 is its allowance of punitive damages in cases involving discriminatory housing practices. Tenn.Code Ann. § 4–21–311 (1994).

A literal reading of the THRA reveals that "punitive damages" are expressly mentioned in only two places. First, punitive damages are mentioned as an express remedy in a civil action for malicious harassment. Tenn. Code Ann. § 4–21–701(b). Second, punitive damages are available to a victim of discriminatory practices under § 4–21–311, but such damages are limited to cases of discriminatory *housing* practices. Tenn.Code Ann. § 4–21–311.[2]

## B. *Availability of Punitive Damages under the THRA*

■ One issue presented before the court is whether a victim of employment discrimination may recover punitive damages under Tenn.Code Ann. § 4–21–311, which incorporates § 4–21–306 by reference. The court has found only a handful of cases and an Attorney General opinion that address this precise issue. *Taff v. Media General Broadcast Services, Inc.*, No. 32, 1986 WL 12240 (Tenn.App. November 3, 1986); *Gifford v. Premier Manufacturing Corporation*, No. 18, 1989 WL 85752 (Tenn.App. August 1, 1989); *Greer v. Sears, Roebuck & Co.*, No. 92:2490, slip opinion, 1992 WL 695822 (W.D.Tenn.1992); Tenn.Atty.Gen.Op. 88–12 (Jan. 12, 1988).

In *Taff*, the Tennessee Court of Appeals held that the term "actual damages" in § 4–21–311 excludes punitive damages. 1986 WL 12240 at *5. The court noted that "it seems clear . . . that if the General Assembly intended to provide for some form of punishment the act would have done so specifically." *Id.* The holding and reasoning in *Taff*

were reaffirmed by the Court of Appeals in *Gifford.* 1989 WL 85752, at *5 ("given the usual and ordinary meaning to the words used in Tenn.Code Ann. § 4–21–311, we could find no intent on the part of the General Assembly to include recovery for punitive damages."). The Attorney General of the State of Tennessee also recognized *Taff* when it stated that punitive damages are not recoverable for violations of the THRA. Tenn. Atty.Gen.Op. 88–12 (January 12, 1988). These three opinions discussed § 4–21–311 as it was originally enacted and before the statute was amended to incorporate the § 4–21–306 remedies explicitly.[3]

In a more recent U.S. district court decision, the court refused to strike the plaintiff's demand for punitive damages. *Greer v. Sears, Roebuck & Co.*, No. 2:92–2490, slip opinion, 1992 WL 695822 (W.D.Tenn.1992). *Greer* was decided after § 4–21–311 had been amended to afford victims of discrimination who chose to file an action in chancery court all the remedies listed in § 4–21–306. Although the General Assembly did not expressly mention punitive damages in its laundry list of remedies in § 4–21–306, the *Greer* court held that punitive damages are available under § 4–21–306(a)(8), a "catch-all" remedial provision. Judge McCrae stated:

> Tenn.Code Ann. § 4–21–306 states that, in addition to the other remedies listed, a plaintiff has available to him:
>
> > Such other remedies as shall be necessary and proper to eliminate all the discrimination identified by the evidence submitted at the hearing or in the record.
>
> Tenn.Code Ann. § 4–21–306(a)(8). Therefore, if punitive damages are necessary and proper to eliminate the discrimination, such damages are available to the plaintiff. . . .

*Cripps v. United Biscuit of Great Britain*, 732 F.Supp. 844 (E.D.Tenn.1989); *Graham v. Holiday Inns*, 48 FEP 71, unreported No. 85–2431, 1986 WL 15783 (W.D.Tenn.1986). *Cripps* held that "actual damages" include compensatory damages, while *Graham* held the exact opposite. This debate was rendered moot by the 1989 amendment to T.C.A. § 4–21–311.

---

**2.** The THRA mentions that a "civil penalty" is recoverable under § 4–21–306(a)(9), but that, too, is only for victims of discriminatory *housing* practices. T.C.A. § 4–21–306(a)(9).

**3.** Two other decisions specifically address the scope of damages recoverable under T.C.A. § 4–21–311 by interpreting the term "actual damages" in the original version of § 4–21–311.

*Greer v. Sears, Roebuck & Co.,* No. 2:92–2490 (W.D.Tenn.1992), slip opinion at 6–7, 1992 WL 695822.

This court respectfully disagrees with Judge McCrae. If the General Assembly intended punitive damages to be recoverable under § 4–21–306, it would have specifically listed them, rather than inferred their availability through a "catch-all" residuary clause such as § 4–21–306(a)(8).

Furthermore, chancery courts sitting in equity seldom have awarded punitive damages in the absence of specific statutory authorization.[4] At common law, chancery courts did not have jurisdiction over controversies arising out of personal injury or personal property.[5] It is only by modern statutes that the jurisdiction of the chancery court has been expanded. Even now, however, chancery courts award punitive damages only in those instances where the legislature has specifically so provided.

The General Assembly's intent not to allow punitive damages under § 4–21–311 is further evidenced by the 1992 amendment, in which it expressly added the remedy of punitive damages, but limited its recoverability to victims of discriminatory housing practices. Tenn.Code Ann. § 4–21–311 (1994). The General Assembly could have granted the

remedy to all victims of discrimination, but declined to do so. Accordingly, this court holds that punitive damages are unavailable under §§ 4–21–306 and 4–21–311 of the THRA.[6]

### C. Common-law Retaliatory Discharge

#### 1. Clanton and its progeny

The plaintiff seeks to amend his complaint to assert a common-law claim for retaliatory discharge, and he seeks punitive damages pursuant to this theory. Before a common-law action for retaliatory discharge was recognized in this state, an employee at will could be discharged for "good cause, bad cause or no cause at all." *Clanton v. Cain–Sloan,* 677 S.W.2d 441, 443 (Tenn.1984) (citing *Payne v. Western Atlantic Railroad Co.,* 81 Tenn. 507 (1884)). While Tennessee is still very much an "employment-at-will" state, retaliatory discharge has served to carve out exceptions to that general rule.

The common-law tort of retaliatory discharge was originally recognized in the context of worker's compensation. *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441 (Tenn.1984). In *Clanton,* the Tennessee Supreme Court found an exception to the "employment-at-will" doctrine by granting a cause of action to an employee who was fired for exercising his

---

4. In *Nashville Union Stockyards, Inc. v. Grissim,* for example, the appellate court upheld the chancery court's award of vindictive damages for the malicious prosecution of an injunction without probable cause. 13 Tenn.App. 115 (Tenn.App. 1930).

5. *See Gibson's Suits in Chancery,* § 23–24 (5th ed. Michie 1955). Chancery court has jurisdiction over "all civil causes of action, triable in the Circuit Court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract." *Id.,* § 24, at p. 22.

6. The plaintiff cites two other cases in support of his argument that punitive damages are available under the THRA. *Wood v. Emerson Electric Company,* unreported No. 01–A–01–9310–CH00467, 1994 WL 716270 (Tenn.1994); *Roberson v. University of Tennessee,* 829 S.W.2d 149 (Tenn.App.1992). These cases are not persuasive. In *Roberson,* the court affirmed a $50,000 award by citing T.C.A. § 4–21–701, which states:

**4–21–701. Creation of civil action—Damages.**—(a) In addition to the criminal penalty

provided ... there is hereby created a civil cause of action for malicious harassment.

(b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages. T.C.A. § 4–21–701. Because the legislature made a point to include "punitive damages" in § 4–21–701, but declined to do so in §§ 4–21–311 and 4–21–306, the court concludes that punitive damages are available to victims of malicious harassment and unavailable to victims of other discriminatory practices (except housing). Even if, as the plaintiff suggests, the *Roberson* court made a mistake in citing § 4–21–701, *Roberson* nevertheless was a case involving sexual harassment. Therefore, *Roberson* cannot stand for the proposition that punitive damages are available under T.C.A. § 4–21–311. *Wood v. Emerson Electric* was also a case involving sexual harassment. The plaintiff argues that the *Wood* court predicated its entire opinion on the assumption that punitive damages are recoverable under T.C.A. § 4–21–311. Because the issue was never raised, *Wood,* too, is unpersuasive.

rights under the worker's compensation act. 677 S.W.2d at 443. The court recognized that the worker's compensation scheme creates "a *duty* on employers to compensate employees for work-related injuries ... and a *right* on the employee to receive such compensation." *Clanton,* 677 S.W.2d at 444 (citing *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425, 427 (1973)) (emphasis original). The court also recognized that if an employee fears being fired, that fear will have a stifling effect on the employee's exercise of his statutory rights. *Id.* Therefore, the *Clanton* court held that "a cause of action for retaliatory discharge, although not explicitly created by the statute, is necessary to enforce the duty of the employer to secure the rights of the employee and to carry out the intention of the legislature." 677 S.W.2d at 445. The *Clanton* court also held that punitive damages were recoverable in an action for retaliatory discharge. *Id.*

█ Since the *Clanton* decision, the common-law tort of retaliatory discharge has been expanded beyond the worker's compensation arena. Courts have recognized other exceptions to the employment-at-will doctrine where employees are discharged "as a consequence of an employer's violation of a clearly expressed statutory policy." *Hodges v. S.C. Toof & Company,* 833 S.W.2d 896, 899 (Tenn. 1992). *See Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 555–56 (Tenn.1988) (listing examples of clearly defined public policies which warrant the protection provided by a retaliatory discharge remedy). In *Hodges,* for example, a plaintiff sued his employer for retaliatory discharge after being fired because of his jury service. 833 S.W.2d 896, 898. Retaliatory discharge was recognized in *Hodges* because there exists a "clearly expressed statutory policy" against firing an employee who misses work to perform jury duty. Tenn.Code Ann. § 22–4–108(f) (1994). In *Reynolds v. Ozark Motor Lines, Inc.,* the court recognized a cause of action for retaliatory discharge where an employee was fired because he refused to violate the safety provisions of the Tennessee Motor Carriers Act. 887 S.W.2d 822 (Tenn.1994). There, the court noted the existence of a clear statutory policy to ensure highway safety. *Id.* at 825;

Tenn.Code Ann. §§ 65–15–101 et seq. The THRA also includes policies that warrant an exception from the employment-at-will doctrine. By statute, an employer cannot discharge employees because of their race, religion, sex, age, physical condition or mental condition. Tenn.Code Ann. 4–21–101 et seq.; *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 556 (Tenn.1993). Obviously, the THRA embodies a "clearly expressed statutory policy" against firing an employee on the basis of these criteria. In light of these examples, it is clear that a claim for retaliatory discharge will lie "where the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision and the employer's violation was a substantial factor in the employee's discharge." *Reynolds,* 887 S.W.2d 822, 823.

### 2. *Exclusive or cumulative remedies*

█ This court's analysis next turns to whether the statutory remedies in Tenn.Code Ann. § 4–21–311 are the sole and exclusive remedies available to an employee who has been discriminated against on the basis of religion. The Tennessee Supreme Court provided clear guidance on this issue in *Hodges v. S.C. Toof & Co.:*

> Resolution of this matter necessitates an examination of the state of the law on retaliatory discharge at the time the statute was enacted. This is so because if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. However, where a common-law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise. Furthermore, the Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation.

833 S.W.2d 896, 898–99 (Tenn.1992) (citations omitted).

The common-law tort of retaliatory discharge, together with its remedy of punitive damages, was created in 1984. *Clanton v. Cain–Sloan,* 677 S.W.2d 441 (Tenn.1984). The THRA was enacted in 1978. Therefore,

this court holds that the remedies embodied in §§ 4–21–306 and 4–21–311 are exclusive.

Plaintiff argues that under the THRA, new statutory remedies were created in 1989 when the General Assembly amended the THRA to make the remedies in § 4–21–306 available to victims who filed a claim in chancery court. Therefore, the plaintiff argues, because the tort of retaliatory discharge was already in place by 1989, the statutory remedies are cumulative to those afforded by the common law. *Hodges*, 833 S.W.2d at 899 (stating that if common law comes first, then subsequently created statutory remedies are cumulative unless expressly stated otherwise by the General Assembly).

The court disagrees with plaintiff. The General Assembly created rights and prescribed remedies for their enforcement when it enacted the THRA in 1978. The General Assembly did not created a new remedy by its 1989 amendment, but merely clarified that victims of discrimination who pursued their claim in chancery court enjoyed the same scope of remedies enjoyed by administrative claimants. *Cripps v. United Biscuit of Great Britain*, 732 F.Supp. 844, 846 (E.D.Tenn. 1989). This scope of remedies, as discussed above, excludes punitive damages.

Even assuming the 1989 amendment was an "expansion" of remedies afforded to judicial claimants, as plaintiff suggests, the pivotal date that *Hodges* requires this court to focus on is still 1978, when the General Assembly created the original remedy to enforce the THRA. *Hodges* supports this reasoning. In *Hodges*, the applicable statute was enacted by the General Assembly in 1978. Tenn.Code Ann. § 22–4–108. That statute in part required employers to pay employees who were called for jury duty their regular wages less any compensation they may receive for serving as jurors. *Id.* In its original text, the statute provided *no civil remedy* whatsoever for an employee who was fired because of jury service. *Id.*

The General Assembly amended § 22–4–108 in 1986, however, by adding a new subsection which *created* a civil cause of action:

(f)(1) No employer shall discharge or in any manner discriminate against an employee for serving on jury duty if such employee, prior to taking time off, gives the required notice pursuant to subsection (a) to the employer that such employee is required to serve.

(2)(A) Any employee who is discharged, demoted, or suspended because such employee has taken time off to serve on jury duty is entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer.

Tenn.Code Ann. § 22–4–108(f) (Michie 1994). The *Hodges* court held that because this statutory right of action was created in 1986 (by way of amendment), its remedies were cumulative to those at common law created in 1984. 833 S.W.2d at 899.

The statute before this court is quite different. The General Assembly created a clear path of enforcement of rights embodied in the THRA at the time of its enactment in 1978. The 1989 amendment did not "create" anything.

## III. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss plaintiff's claim for punitive damages pursuant to the THRA is well taken. Plaintiff's motion to amend his complaint to add a common-law retaliatory discharge claim is denied because the remedies embodied in the THRA are exclusive. An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, the defendant's motion to dismiss plaintiff's state-law claim for punitive damages (Docket No. 43) is granted. The plaintiff's motion to amend his complaint to add a common-law claim for retaliatory discharge (Docket No. 53) is denied.