**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OVERSEAS MOTORS, INC., Respondent.**

**No. 86–5225.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1987.

Decided May 11, 1987.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Nancy Hunt (argued), Peter Winkler, Bernard Gottfried, Director Region 7, N.L.R.B., Patrick McNamara, Detroit, Mich., for petitioner.

J. Laevin Weiner (argued), C. Robert Wartell, William E. Sigler, Maddin, Weiner, Hauser, Wartell and Roth, Southfield, Mich., for respondent.

Before KENNEDY, JONES and NORRIS, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Petitioner National Labor Relations Board ("NLRB" or "Board") seeks enforcement of its supplemental order requiring respondent Overseas Motors, Inc. ("Overseas") to give back pay to an employee, Miroljub Mitkovski, who was unlawfully discharged from his job as an automobile mechanic. Overseas argues that: (1) its due process rights were violated; (2) the administrative law judge ("ALJ") behaved in a biased or prejudiced manner; (3) the back pay formula used by the General Counsel was inappropriate considering the alternatives available, the mitigating .circumstances, and Mitkovski's interim earnings; and (4) Mitkovski was not entitled to any back pay or, in the alternative, that Overseas' back pay formula should have been adopted. We find that the ALJ impermissibly restricted Overseas' cross-examination of Mitkovski regarding his interim earnings, thereby depriving Overseas of a fair hearing. Accordingly, we DENY enforcement of the present back pay award.

On November 23, 1983, this Court enforced the Board's original decision and order in this case. *See NLRB v. Overseas Motor, Inc.*, 721 F.2d 570 (6th Cir.1983). The Board had found that Overseas had unlawfully threatened, suspended, and ultimately discharged Mitkovski in violation of 29 U.S.C. § 158(a)(4), because he had contacted the NLRB and had filed a charge against Overseas. *See Overseas Motors, Inc.*, 260 N.L.R.B. 810, 109 L.R.R.M. 1225 (1982). The Board ordered, inter alia, that Overseas offer Mitkovski full reinstatement and make him whole for any loss of pay he may have suffered as a result of being unlawfully suspended and discharged.

Despite the order of enforcement, Overseas refused to reinstate Mitkovski. After this Court issued an order to show cause why Overseas should not be held in civil contempt, Overseas agreed to reinstate Mitkovski on July 11, 1984. The contempt proceeding was dismissed without prejudice.

The parties were unable to agree on the amount of back pay due Mitkovski and so a back pay proceeding was begun. On November 7, 1984, the Board's Regional Director for Region 7 issued a back pay specification and a notice of hearing. A back pay hearing was held before an ALJ between February 13 and March 12, 1985. During the hearing, the Board filed an amended back pay specification.

On July 3, 1985, the ALJ issued his supplemental decision fixing the amount of back pay. The ALJ adopted the General Counsel's formula—a projection based on a "representative employee" whose wages were similar to Mitkovski's prior to his discharge. The ALJ agreed with Overseas that the "base period" for comparison advocated by the General Counsel was inappropriate and instead chose a shorter period during which the two employees' wages were equivalent. The ALJ accepted the amount of interim earnings discovered by the General Counsel and determined that Mitkovski was entitled to $93,648.73 in back pay, plus interest. The Board issued a Supplemental Decision and Order affirming the ALJ's rulings, findings, and conclusions, and directed Overseas to make Mitkovski whole in the amount determined by the ALJ. *See Overseas Motors, Inc.*, 277 N.L.R.B. No. 61, 121 L.R.R.M. 1309 (1985).

Overseas argues first that the ALJ was biased or prejudiced against it and that as a result Overseas was denied due process. Overseas complains that the ALJ

> inserted himself, warped the orderly presentation of the case of [Overseas], encouraged the General Counsel, assisted in the making of objections, lead [sic] the inquiry into areas where counsel for [Overseas] had been precluded from making inquiry, displayed frustration and impatience with witnesses including the principal of [Overseas], allowed General Counsel to impeach his own witness, made unilateral determinations without foundation as to the credibility of witnesses, allowed testimony which could

only have qualified as rebuttal but which came through in the hearing as outside the scope of rebuttal, and in every way inserted himself into the proceedings to the point where even the pretense of impartiality had disappeared.

Respondent's Brief at 12.

Although we cannot approve of the ALJ's conduct of the hearing, there was no due process violation. It appears that the ALJ was dealing with a very difficult situation. At least one of the major witnesses, Mr. Demrovsky, an officer of Overseas, was a difficult witness. His testimony was confusing, at best, and sometimes inconsistent. Moreover, the attorneys themselves were contentious and argumentative. The transcript of the hearing to set back pay for a single employee is 957 pages plus 38 exhibits.

■ Although the ALJ did participate actively in the questioning, much of that participation was necessary to clarify the record. An ALJ can interrupt or question witnesses in order to clarify testimony. *See NLRB v. Honaker Mills,* 789 F.2d 262, 265 (4th Cir.1986); *NLRB v. Air Flow Sheet Metal, Inc.,* 396 F.2d 506, 508 (7th Cir.1968); *Bethlehem Steel Co. v. NLRB,* 120 F.2d 641, 652 (D.C.Cir.1941). Although the ALJ did on one instance encourage the General Counsel to make an objection, *see* Joint Appendix at 75–76, he did the same for Overseas' counsel at another point. *See* Joint Appendix at 11–12. The ALJ also rebuked the General Counsel on occasion. *See, e.g.,* Joint Appendix at 116. In short, the ALJ appeared to treat each side the same. We see no evidence that the ALJ was biased or prejudiced.

■ Overseas next argues that the back pay formula used by the Compliance Officer and the ALJ was inappropriate, given the alternatives available, the mitigating circumstances, and Mitkovski's interim earnings. The Board calculated Mitkovski's back pay using the "representative employee" method. Under this method, the earnings of the discriminatee and some other, representative, employee are compared during some base period when both were working. The resulting ratio is multiplied by the representative employee's earnings during the period in which the discriminatee was unlawfully deprived of work. This "gross back pay" figure is then reduced by the amount of the discriminatee's interim earnings or other deductions established at trial by the employer, resulting in the "net back pay" figure, subject to the employer's other defenses. The Sixth Circuit has approved the use of the "representative employee" approach in the past, *see, e.g., NLRB v. S.E. Nichols of Ohio, Inc.,* 704 F.2d 921, 924 (6th Cir.), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983), and we find it to be a reasonable means of calculating back pay in this instance as well.

■ We reject Overseas' contentions that Mitkovski is not entitled to any back pay. Overseas is attempting to relitigate issues previously decided against it in the unfair labor practices proceeding, and it is not permitted to do so now. We also reject Overseas' contention that the ALJ should have adopted its back pay formula, which would have resulted in a lower back pay award than that determined by the Board. The Board has broad discretion in fashioning the back pay remedy, and its order cannot be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Fibreboard Paper Prod. Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964) (quoting *Virginia Elec. & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)). The Board's discretion extends to determining what method should be used in calculating the back pay award:

A back pay award is only an approximation, necessitated by the employer's wrongful conduct. In any case, there may be several equally valid methods of computation, each yielding a somewhat different result.... The fact that the Board necessarily chose to proceed by one method rather than another hardly makes out a case of abuse of discretion.

*Bagel Bakers Council of Greater New York v. NLRB,* 555 F.2d 304, 305 (2d Cir.

1977). The Board is required only to adopt a formula which will give a close approximation of the amount due, *see NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 452 (8th Cir.1963); it need not find the exact amount due. We see no grounds for overturning the Board's choice of a formula.

■ We also find no merit in Overseas' argument that the Compliance Officer had a duty to investigate the sources and amounts of Mitkovski's possible interim earnings, and that his failure to do so was error. Overseas clearly did not comprehend its burden of proof in the back pay proceeding. The General Counsel has a duty only to show the gross amount of back pay due, *i.e.*, the amount of money that the employee would have earned had the employer not violated the National Labor Relations Act. *See S.E. Nichols*, 704 F.2d at 924. Once he has done so, "the burden is upon the *employer* to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability." *NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir.1968) (emphasis added; citations omitted); *see also S.E. Nichols*, 704 F.2d at 924.

■ However, we do find Overseas' argument that the ALJ impermissibly restricted the cross-examination of Mitkovski regarding his interim earnings to be valid. Mitkovski admitted that he did auto repair work at his home during the back pay period. (He was licensed by the State of Michigan to do such repair work for at least the last two years of the back pay period.) He acknowledged that he kept no records of that work or the amount he earned. He estimated his earnings from that work to be a total of $12,000. (His total interim earnings, including part-time work for another repair shop, were $14,-621.16; unemployment compensation was an additional $4,061.) His wife was not employed outside the home. Nevertheless, he made mortgage payments and supported his wife and two sons. He testified that he spent about $2,000 a month, which would amount to $96,000 for the four-year period. (The ALJ found that Mitkovski must have lived on a minimum of $9,000 per year. However, the only testimony regarding his living expenses is Mitkovski's, who said it cost him $2,000 a month.)

There is the suggestion that Mitkovski claimed loans of $70,000 to account for the discrepancy between his income and his expenditures. The ALJ prohibited Overseas from questioning Mitkovski about these loans, on the grounds that loans are not income. Indeed, during Overseas' examination of Mitkovski, the ALJ sustained objections even to questions regarding Mitkovski's living expenses. It was only after Mitkovski had testified on later examination by the General Counsel that he estimated his interim earnings by figuring out what he spent and what he borrowed that Overseas was permitted to ask questions about such expenditures, and this inquiry was cut off after Mitkovski gave just the $2,000 per month figure. Further, the ALJ would not permit inquiry regarding other expenditures. Mitkovski took four trips to Yugoslavia during this period, two of them with his entire family. The ALJ also prohibited cross-examination about Mitkovski's relationship with a wine-importing business after he testified that he had no earnings from the business, even though he was registered as a salesman for the company with the State of Michigan. Overseas was entitled to make full inquiry about Mitkovski's expenditures and the source of those funds, especially since he kept no records of the repair work he did at his home. None of the loan money or the money earned from repairs was reflected in his bank account records.

We agree with Overseas that the ALJ erred in prohibiting cross-examination regarding Mitkovski's expenditures and the source of almost $100,000 spent on living expenses and overseas trips. The failure to keep any records of the repair work he acknowledges doing at his home together with the failure to use his bank accounts are suspicious circumstances about which Overseas was entitled to closely question Mitkovski. Overseas was also entitled to inquire about Mitkovski's relationship to the wine-importing company and any services he rendered to it, whether he received a salary or not. He could have been paid

for services by a trip to Yugoslavia for himself and his family—not an inconsiderable expense. The ALJ's refusal to permit such inquiry denied Overseas a fair hearing and requires that we deny enforcement of the present back pay award.

Overseas also relies on *NLRB v. Pugh & Barr, Inc.*, 207 F.2d 409 (4th Cir.1953). There, the court refused to enforce an order of back pay to an employee when the employee's interim earnings were $294.20, just 5.73% of the earnings of the representative employee over the same period. The court found it "incredible" that the employee could not have earned more if he had made reasonable efforts to find work, and stated that "[t]he awarding of so large a sum as back pay without the finding of special circumstances justifying it cannot be sustained." 207 F.2d at 410. (On remand, the court reinstated the back pay award after a showing that the employee's low interim earnings were a result of his age and a job shortage in the area, rather than his own unwillingness to find a job. *NLRB v. Pugh & Barr, Inc.*, 231 F.2d 558 (4th Cir.1956).) Here, Mitkovski claimed $14,621 in interim earnings, 13.52% of the $108,170 earned by the representative employee during the same period. Because we do not know what cross-examination would disclose, we do not know whether special circumstances here explain what might otherwise appear incredible.

Overseas raises numerous other factors which it contends should have reduced its back pay liability. We have reviewed these issues and find no error in the Board's treatment of these matters.

Accordingly, we DENY enforcement of the present back pay award. We remand the action to the Board so that it may conduct further proceedings in accordance with this opinion.