953 F.2d 644
 139 L.R.R.M. (BNA) 2400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Miroljub MITKOVSKI, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Overseas Motors, Inc., Intervenor.
 No. 911-15159.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this case we review the decision and order of the National Labor Relations Board [NLRB or Board] dated September 27, 1990. Overseas Motors, Inc., 299 NLRB Dec. (CCH) 158, 136 L.R.R.M. (BNA) 1081 (1990). In a two to one decision, the NLRB denied Miroljub Mitkovski all back pay. The majority of the Board determined that Mitkovski failed to explain adequately the reasons for the discrepancy between the expenditures he claimed and his income during the period in which he was entitled to back pay. From the discrepancy the majority of the NLRB inferred that Mitkovski received income during the back pay period that he did not report to the Board. Because the Board could not allocate Mitkovski's concealed income to specific quarters of the back pay period, the NLRB majority concluded that Mitkovski was not entitled to any back pay at all.
 
 
 2
 In this case the issue is whether Mitkovski's former employer, Overseas Motors, met its burden of demonstrating that Mitkovski intentionally concealed income he received during the back pay period. We find that the facts do not permit the Board's inference that Mitkovski intentionally concealed interim earnings. Although we are reluctant to add another chapter to this 1980 dispute, we reverse the NLRB's decision and remand this case to the Board with instructions to grant Mitkovski back pay as hereinafter indicated.
 
 I. FACTS
 
 3
 The circumstances giving rise to this voluminous litigation began over ten years ago on September 12, 1980. On that date Overseas Motors gave raises to all of its employees. Mitkovski, the highest paid mechanic, received a $0.60 per hour raise; all other mechanics received a $1.20 per hour raise. Mitkovski informed Overseas Motors that he intended to file a complaint with the NLRB because he believed the company discriminated against him regarding a pay raise. In response to Mitkovski's actions and the NLRB's subsequent measures, Overseas Motors engaged in labor practices, which the Board subsequently found to be unfair; the company fired Mitkovski on October 23, 1980.
 
 
 4
 After investigation and hearings, on March 11, 1982 the NLRB issued an order in which the Board found that Overseas Motors had unlawfully threatened, suspended, and discharged Mitkovski in violation of Sections 8(a)(1) and (4) of the National Labor Relations Act. 29 U.S.C. §§ 158(a)(1) and (4). The Board ordered Overseas Motors to offer Mitkovski reinstatement and to make him whole for any loss of pay he may have suffered by reason of the company's discrimination against him. Overseas Motors, Inc., 260 NLRB Dec. (CCH) 810, 109 L.R.R.M. (BNA) 1225 (1982). The Sixth Circuit enforced the NLRB decision and order. NLRB v. Overseas Motors, Inc., 721 F.2d 570 (6th Cir.1983).
 
 
 5
 Overseas Motors did not reinstate Mitkovski until July 11, 1984. Because the parties could not agree on the amount of back pay owed, the NLRB ordered an Administrative Law Judge [ALJ] to conduct a hearing to determine an appropriate back pay award. The first back pay hearing occurred between February 13 and March 12, 1985. On July 3, 1985 the ALJ issued a decision which stated that Mitkovski was entitled to $93,648.73 and interest. The NLRB issued a supplemental decision and order affirming the ALJ's conclusions; the Board directed Overseas Motors to pay Mitkovski the amount determined by the ALJ. Overseas Motors, Inc., 277 NLRB Dec. (CCH) 61, 121 L.R.R.M. (BNA) 1309 (1985). In their findings the ALJ and the NLRB calculated the back pay owed Mitkovski using the "representative employee" method which this Court indicated was a reasonable means of determining back pay in this case. NLRB v. Overseas Motors, Inc., 818 F.2d 517, 520 (6th Cir.1987). In this Court's review of the NLRB's supplemental decision, Overseas Motor's arguments that Mitkovski was not entitled to any back pay were explicitly rejected. Id. at 520. In that decision we indicated that the employer had the burden to establish facts which would negate the evidence of liability for back pay once the General Counsel had demonstrated the gross amount of back pay due. Id. at 521. Nevertheless, we remanded the case because we determined that Overseas Motors had not been given due process. More specifically, we found that the ALJ erred in prohibiting Overseas Motors from cross-examining Mitkovski on his interim earnings, on the sources of his income, and on his expenditures. Id.
 
 
 6
 Pursuant to the remand, the ALJ held a second back pay hearing on November 30 and December 1, 1987. At the second hearing Overseas Motors cross-examined Mitkovski about loans he allegedly received and about his search for interim employment as an auto mechanic. Overseas Motors called two witnesses from whom Mitkovski had allegedly borrowed money. After the second hearing, the ALJ reaffirmed his order awarding Mitkovski back pay of $93,648.73. The ALJ found the evidence indicated that for the back pay period Mitkovski's income from self-employment, unemployment compensation, and loans amounted to roughly $78,700.00; the ALJ found Mitkovski's expenditures amounted to roughly $90,000.00. Furthermore, the ALJ determined that Overseas Motors failed to demonstrate that Mitkovski did not make reasonable efforts to find interim employment. The ALJ did not find that the discrepancy between Mitkovski's income and expenditures was sufficient to create an inference that Mitkovski had failed to disclose additional interim earnings.
 
 
 7
 On December 16, 1988 the NLRB ordered the case remanded to the ALJ for inquiry into whether Mitkovski committed perjury concerning interim earnings during earlier hearings, and the ALJ conducted a third back pay hearing on April 11 and 12, 1989. The ALJ determined that Mitkovski lied about $2,000.00 he said he had borrowed from Timothy Keyes, and the ALJ concluded that Mitkovski inflated the amount of a loan from Robert Wagner. The ALJ determined that Mitkovski attempted to suborn perjury by asking Dale Flohr to testify that the Petitioner had not repaid a $7,500.00 note which in fact Mitkovski had already repaid.
 
 
 8
 At the third back pay hearing the ALJ revised his earlier estimate of Mitkovski's income and determined that the total amount Mitkovski received from all sources during the back pay period was approximately $82,500.00. The ALJ revised his estimate of Mitkovski's expenditures as well. At the third hearing the ALJ found that Mitkovski's estimate of "close to" $2,000.00 per month in expenditures actually meant "somewhat less than" this figure. At ninety percent of $2,000.00 (the ALJ's arbitrary figure for somewhat less than $2,000.00) the ALJ calculated that Mitkovski's total expenditures for the forty-eight month back pay period equalled $86,400.00. Indeed, in arriving at this figure, the ALJ failed to reduce Mitkovski's expenditures to $1000.00 per month for the six month period Mitkovski remained with family in Yugoslavia; the ALJ had in fact reduced Mitkovski's expenditures by this amount after the second back pay hearing. The ALJ further determined that because the discrepancy between Mitkovski's expenditures and income was small, the shortfall did not suggest that Mitkovski concealed interim earnings. The ALJ found that Overseas Motors did not adequately rebut Mitkovski's claim that he had made good faith efforts to find work. Finally, the ALJ determined that Mitkovski's carelessness with the truth was insufficient to undermine his testimony concerning interim earnings and efforts to find employment.
 
 
 9
 In a two to one decision on September 28, 1990 the NLRB denied Mitkovski all back pay. See Overseas Motors, Inc., 299 NLRB Dec. 158. The majority believed the 1987 Sixth Circuit remand placed a burden on the General Counsel to demonstrate "special circumstances" justifying the back pay award. See Overseas Motors, 818 F.2d at 522, citing NLRB v. Pugh & Barr, Inc., 207 F.2d 409, 410 (4th Cir.1953). The majority found that Mitkovski's expenditures of $96,000.00 during the back pay period was a determination not within the scope of the remand to the ALJ; thus, the majority did not adopt the ALJ's revised figure for expenditures. The Board majority determined that Mitkovski's income during the back pay period was $82,000.00. The NLRB majority held that Mitkovski failed to explain adequately the reasons for the discrepancy between his expenditures and income. The Board majority inferred that this discrepancy was attributable to income from sources Mitkovski had not reported. Because the NLRB majority believed it could not allocate the unreported income to specific quarters during the back pay period, the Board majority concluded that Mitkovski was not entitled to back pay for any portion of the back pay period. The majority believed that this conclusion was consistent with previous NLRB decisions. See e.g. Great Plains Beef Co., 255 NLRB Dec. (CCH) 1410, 107 L.R.R.M. (BNA) 1097 (1981).
 
 II. JURISDICTION AND STANDARD OF REVIEW
 
 10
 Pursuant to Section 10(f) of the National Labor Relations Act, 29 U.S.C. §§ 151, 160(f), this Court has jurisdiction to review final orders of the NLRB if the unfair labor practices in question were alleged to have been engaged in within the Circuit. Thus, this Court has jurisdiction over Mitkovski's claim because he asks this Court to set aside the NLRB order denying him all back pay, alleging that the unfair labor practices underlying the Board's order occurred in Michigan.
 
 
 11
 Where there is substantial evidence in the record as a whole to support the Board's conclusions, these conclusions may not be disturbed upon appeal. See Hyatt Corp v. NLRB, 939 F.2d 361, 366 (6th Cir.1991). In an earlier chapter of the Mitkovski saga we outlined our standard of review recognizing that NLRB orders should not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the National Labor Relations Act. Overseas Motors, 818 F.2d at 520, citing Fiberboard Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964). This Court previously found that Overseas Motors committed unfair labor practices which were prima facie violations of the National Labor Relations Act. Overseas Motors, 721 F.2d at 571. In a subsequent decision we explicitly rejected Overseas Motors contentions that Mitkovski was not entitled to any back pay. Overseas Motors, 818 F.2d at 520. We conclude that denying Mitkovski all back pay would not further the cause of justice; nor would it further the policies of the Act.
 
 III. DISCUSSION
 
 12
 Previous Sixth Circuit decisions indicate that the NLRB has the discretion to make inferences different from an ALJ as long as these inferences do not depend upon assessments of demeanor. See e.g. NLRB v. Wooster Div. of Borg-Warner Corp., 236 F.2d 898, 907 (6th Cir.1956), aff'd in part, rev'd in part, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). The Supreme Court has noted, however, that an ALJ's decision is entitled to substantial weight and that it must be considered when evaluating an NLRB decision and order. Universal Camera Corp. v. NLRB, 340 U.S. 474, 494, 71 S.Ct. 456, 467-468, 95 L.Ed. 456 (1951). In Universal Camera the Supreme Court stated that evidence supporting an NLRB conclusion may be treated as less substantial when an impartial, experienced examiner, who has observed the witnesses, has drawn conclusions different from the Board's conclusions. 340 U.S. at 496, 71 S.Ct. at 468-469. The Supreme Court's reasoning is particularly appropriate in cases involving the credibility of witnesses before an ALJ. The more important credibility of witnesses is to an appellate court's review, the more weight an appellate court should give to an ALJ's inferences and conclusions. Mitkovski's credibility concerning his interim earnings and his efforts to find work was a key issue before the ALJ. The ALJ's conclusions concerning Mitkovski's credibility were entitled to more deference than the NLRB majority accorded them. The Board majority impermissibly substituted its own conclusions concerning Mitkovski's credibility.
 
 
 13
 In a back pay case in which the First Circuit reviewed an NLRB decision, the Court rejected the argument that information concerning interim earnings was so inconsistent with established fact that the ALJ could not have formed a supportive basis for a lost earnings determination. NLRB v. Izzi, 395 F.2d 241 (1st Cir.1968). The Court held that the ALJ was not precluded as a matter of law from granting a back pay award when the petitioner lied; rather, the Court specifically noted that even though some testimony was unbelievable, it did not require that all testimony be disregarded. Id. at 243-244.
 
 
 14
 In the Sixth Circuit's most recent treatment of Mitkovski's case, Overseas Motors, 818 F.2d at 520-521, this Court cited with approval the Fourth Circuit decision, NLRB v. Pugh & Barr, Inc. In Pugh, the Fourth Circuit held that if the amount of earned income is small relative to a back pay award, an employee must demonstrate "special circumstances" which indicate why the employee was able to earn so little relative to the award. Pugh, 207 F.2d at 410. In Pugh, interim earnings amounted to only five percent of the back pay award. In a subsequent decision the Fourth Circuit found that a labor surplus in the area combined with the employee's age explained the petitioner's difficulty in obtaining employment, and justified the payment of a back pay award that was large relative to the petitioner's interim earnings. NLRB v. Pugh & Barr, Inc., 231 F.2d 558, 559 (4th Cir.1956).
 
 
 15
 In Mitkovski's case the record indicates that his earnings amounted to roughly fifteen percent of the back pay award. The ALJ made no specific finding of "special circumstances" that justified an award of back pay that was large relative to Mitkovski's interim earnings. The ALJ indicated, however, that blackballing at several local auto dealerships made it difficult for Mitkovski to obtain employment. Moreover, the ALJ noted that Mitkovski could not have worked as a private mechanic to earn additional income during much of the back pay period because he left his tools as collateral for one of his loans. Based on the ALJ's findings, we are satisfied that Mitkovski has adequately demonstrated circumstances that explain why he is entitled to a back pay award which is large relative to his interim earnings.
 
 IV. CONCLUSION AND ORDER
 
 16
 As the ALJ found, Mitkovski attempted to inflate the value of the loans he received during the back pay period. This finding does not permit the inference that Mitkovski concealed interim earnings, however. Nor does it demonstrate that Mitkovski failed to search for interim employment. We agree with the ALJ that Overseas Motors failed to prove that Mitkovski supported himself and his family through earnings that he intentionally concealed. We find the evidence indicates that Mitkovski is entitled to a large back pay award relative to his income during the back pay period due to special circumstances underlying his petition. Accordingly, we hold there was not substantial evidence in the record to support the Board majority's decision to reach conclusions different from the ALJ's concerning Mitkovski's credibility. The Board majority was not justified in denying Mitkovski back pay based on its inferences that he concealed interim earnings or failed to seek employment during the back pay period. The NLRB was not permitted to infer facts which the employer had the burden of proving.
 
 
 17
 For the reasons stated above, we reverse the NLRB's second supplemental decision, and we direct the Board to enforce the ALJ's third supplemental decision dated July 18, 1989 which reaffirmed the ALJ's order of March 11, 1988.
 
 
 18
 Petition granted; reversed and remanded with instructions.