*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NATIONAL LABOR RELATIONS BOARD,
                              *Petitioner,*

          *v.*                                          No. 08-1462

JACKSON HOSPITAL CORPORATION, dba
Kentucky River Medical Center,
                              *Respondent.*

On Application for Enforcement of an Order
from the National Labor Relations Board.
Nos. 9-CA-38468; 9-CA-38237; 9-CA-38084-2; 9-CA-38084-1;
9-CA-37875; 9-CA-37796; 9-CA-37795-2; 9-CA-37795-1; 9-CA-37734.

Argued: January 22, 2009

Decided and Filed: February 18, 2009

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Amy H. Ginn, NATIONAL LABOR RELATIONS BOARD, Washington,
D.C., for Petitioner. Bryan Tyler Carmody, LAW OFFICE, Stamford, Connecticut, for
Respondent. **ON BRIEF:** Amy H. Ginn, Jill A. Griffin, NATIONAL LABOR
RELATIONS BOARD, Washington, D.C., for Petitioner. Bryan Tyler Carmody, LAW
OFFICE, Stamford, Connecticut, Don T. Carmody, Brentwood, Tennessee, for
Respondent.

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio,
sitting by designation.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge. In a previous proceeding, the National Labor Relations Board found that respondent Jackson Hospital Corporation, which does business as Kentucky River Medical Center, fired eight employees because of their union support and participation in a lawful strike, in violation of sections 8(a)(1) and (3) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1), (3). *Jackson Hosp. Corp.*, 340 N.L.R.B. 536 (2003), *enforced*, No. 04-1018, 2005 U.S. App. LEXIS 10450 (D.C. Cir. June 3, 2005). The Board now seeks to enforce its supplemental decision and order directing Jackson Hospital to pay specific backpay amounts to four of the eight discriminatees: Eileen Jewell, Debbie Miller, Lois Noble, and Maxine Ritchie. We ENFORCE the Board's order.

I.

In 2000, before a collective-bargaining agreement could be reached between Jackson Hospital and the United Steelworkers, which represented this unit of Jackson Hospital's employees, the employees went on strike. Following reports of discrimination in retaliation to the strike, the National Labor Relations Board's General Counsel issued a complaint alleging that Jackson Hospital had engaged in unfair labor practices. An administrative law judge held that Jackson Hospital had unlawfully discharged eight employees because of their union support and participation in the strike. The Board affirmed those findings and the United States Court of Appeals for the District of Columbia Circuit enforced the order. *Jackson Hosp. Corp.* 340 N.L.R.B. 536 (2003), *enforced*, No. 04-1018, 2005 U.S. App. LEXIS 10450 (D.C. Cir. June 3, 2005).

This dispute concerns the backpay amounts owed to four reinstated employees. After a hearing, an administrative law judge issued a supplemental decision ordering Jackson Hospital to pay specific backpay amounts. The Board then issued its own supplemental decision and order affirming the administrative law judge's findings and

adopting her proposed order with slight modifications to the backpay awards for Maxine Ritchie and Debra Miller.[1]

The Board filed its application for enforcement before this Court. The facts specific to each employee are discussed, as relevant, below, and the complete facts are recounted at length in *Jackson Hospital Corp.*, 352 N.L.R.B. No. 33 (2008).

II.

Before proceeding to Jackson Hospital's employee-specific contentions, we begin with its global argument encompassing all of the employees: namely, that the ALJ improperly ruled that Jackson Hospital was not entitled to certain personal banking and other records that may or may not have revealed that the discriminatees were hiding income. Before the ALJ, Jackson Hospital requested, in total, income tax records, documents showing job qualifications, self-employment information, and retirement, disability, education, and banking records. The ALJ enforced the subpoenas against the discriminatees for documents relating to interim earnings, search for work, supplemental education, and Union correspondence, but quashed Jackson Hospital's demands for personal banking records and records related to other private financial obligations. In denying Jackson Hospital's request, the ALJ characterized it as "speculative" and as part of a "fishing expedition." And Jackson Hospital admits that it has no particular reason to suspect that these employees hid any income, thus it necessarily argues that all employers are entitled to the sort of personal financial information that it was denied in every backpay case; otherwise, it asserts, the proceeding is so unfair that its due process rights were violated.

Generally, ALJs have broad authority over their hearings, and we review decisions to exclude evidence only for abuse of discretion. *Ky. River Cmty. Care, Inc. v. NLRB*, 193 F.3d 444, 452 (6th Cir. 1999). Jackson Hospital heavily relies on *NLRB v. Overseas Motors, Inc.*, 818 F.2d 517 (6th Cir. 1987), which involved an ALJ who

---

[1]The Board ordered Jackson Hospital to pay the following amounts of backpay, plus interest, to the discriminatees: Eileen Jewell - $41,592; Debra Miller - $39,854; Lois Noble: $40,268; Maxine Ritchie - $88,524.

refused to allow an employer to even cross-examine a discriminatee who had kept no records regarding his self-employment as to the source of nearly $100,000 that he had spent on family trips and living expenses, *id.* at 521. But that situation was particularly egregious because the employee's estimates of his living expenses were so unrealistic—at one point he testified to only spending $2,000 a month but other records indicated yearly expenses of over $96,000. *Id.*

Nothing here is so severe, and thus the ALJ did not violate Jackson Hospital's due process rights when it denied its request for such private financial information. For an employer to show that it is entitled to the kind of private financial information that Jackson Hospital requests, it must establish some reasonable suspicion to believe that an employee is hiding income. *See Overseas Motors*, 818 F.2d at 521. Jackson Hospital was permitted to fully cross-examine the discriminatees (which gave rise to no reasonable suspicion that the employees were hiding income), had ample other evidence to adequately determine their appropriate backpay awards (including social security records), and the employees' testimony regarding their expenses and job-search efforts went unrebutted. And, at oral argument, Jackson Hospital's counsel admitted that it had no individualized basis to suspect that the employees here were hiding anything, and, instead argued for a blanket rule that employers were always entitled to such personal records in every case. This goes too far, and the ALJ did not abuse her discretion.

III.

Jackson Hospital also challenges the enforcement of the Board's order with respect to each employee, arguing that: (1) the record does not include substantial evidence to support the Board's conclusion that Eileen Jewell properly mitigated her damages; (2) Debbie Miller's backpay award was improper because the Board should have considered the income she received from the trucking business she owned; (3) Lois Noble's backpay award should have been tolled when she rejected Jackson Hospital's offer of temporary interim employment; and (4) Jackson Hospital should have been given the opportunity to litigate Maxine Ritchie's status as a supervisor via retroactive

application of the Board's decision in *Oakwood Healthcare, Inc.*, 348 N.L.R.B. No. 37 (2006).

When the Board finds that an employer has engaged in an unfair labor practice, section 10(c) of the National Labor Relations Act compels it "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the [Act's] policies." 29 U.S.C. § 160(c). The Board's remedial power is "a broad, discretionary one, subject to limited judicial review." *Fibreboard Paper Prods. Corps. v. NLRB*, 379 U.S. 203, 216 (1964). As a result, we may not disturb the Board's backpay orders "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Overseas Motors*, 818 F.2d at 522 (quoting *Fibreboard*, 379 U.S. at 216). Thus, the question is "whether the Board has abused its discretion in fashioning its remedial order." *NLRB v. Joyce W. Corp.*, 873 F.2d 126, 128 (6th Cir. 1989) (quotations omitted).

Specifically, "[w]here the issue before the Board is the amount of an employer's liability to an employee for the unfair labor practice of discharge for engaging in protected activity, the burden on the General Counsel for the NLRB is limited to showing the gross amount of back pay due." *Overseas Motors*, 818 F.2d at 521. Once gross pay—the amount of money that the employee would have earned had the employer not violated the National Labor Relations Act, *see id.* at 521—has been established, "the burden is on the employer to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability," *id.* (quoting *NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir. 1968)). "[T]he Board's conclusion as to whether an [employer has met this burden] will be overturned on appeal only if the record, considered in its entirety, does not disclose substantial evidence to support the Board's findings." *NLRB v. Westin Hotel*, 758 F.2d 1126, 1129-30 (6th Cir. 1985); *see also TNS, Inc., v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002); *NLRB v. Velocity Express, Inc.*, 434 F.3d 1198, 1201 (10th Cir. 2006) ("Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (quotations and internal citations omitted).

### A.    *Eileen Jewell*

Jackson Hospital argues that the record does not include substantial evidence to support the conclusion that Jewell properly mitigated her damages. Prior to firing her, Jackson Hospital employed Jewell—then sixty years old—as a surgical technician. Her duties included sterilizing surgical instruments, ensuring that scrubs and other equipment were available for the surgeons, and generally keeping surgical areas clean. As determined by the ALJ and affirmed by the Board, her backpay period began on August 17, 2000 (when she was fired), and concluded in the third quarter of 2003, when she retired and began to receive social security benefits.

The ALJ found that, after being fired, Jewell looked for work in the Beattyville and Lee County areas near her home.[2] She did not apply to nearby hospitals because, as far as she knew, they had no surgical units, and she instead asked for work at a library, a grocery store, and a general store. She inquired about working as an aide to the elderly, but did not ask about working in nearby doctors' offices because she said she knew all three doctors in Beattyville and each had kept the same staffs for a substantial period of time. Eventually, she obtained a job with Rite-Aid as a pharmacy technician. Her employment there ended, however, when two new employees were transferred to her store and store managers asked her to transfer to another Rite-Aid located roughly seventy miles away. After asking about other stores closer to home and about other positions—requests which were all denied—she left Rite-Aid in November 2002.

This Court has explained that "a wrongfully-discharged employee is only required to make a reasonable effort to mitigate damages, and is not held to the highest standard of diligence." *Westin Hotel*, 758 F.2d at 1130. Moreover, this "reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual's background and experience and the relevant job market." *Id.* "This burden is not onerous, and does not mandate that the plaintiff be successful in mitigating

---

[2]The ALJ "found Jewell to be a totally credible witness" who "did not appear to embellish her search for work or to minimize any apparent weaknesses in her attempts to find interim employment." *NLRB v. Jackson Hosp. Corp.* 352 N.L.R.B. No. 33, n.16 (2008).

the damage." *Id.* Nevertheless, deductions will be made from gross backpay "for actual [interim] earnings by the worker, [and] for losses which [the worker] willfully incurred" by a "clearly unjustifiable refusal to take desirable new employment." *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 198-200 (1941). But, this being an affirmative defense, the burden remains on the employer to prove that the employee failed to mitigate her damages. *NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir. 1968).

Jackson Hospital argues that: (1) in the aggregate, Jewell did not conduct a full job search, particularly because she limited it to the nearby Beattyville, Kentucky area; (2) while employed at Rite-Aid, Jewell failed to continue her job search and this constituted a failure to mitigate damages; (3) Jewell's backpay should be tolled from the time she left Rite-Aid because she left voluntarily, and (4) after leaving Rite-Aid, she failed to continue her efforts to search for employment.

Regarding the scope of her search, the ALJ found "no evidence that [Jewell] neglected to make an honest good faith effort" to search for work. Likewise, in *Westin Hotel*, this Court held that a cocktail waitress' failure to apply for comparable jobs located twenty-five miles from her home was reasonable, 758 F.2d at 1130, so there was nothing improper about Jewell limiting her focus to the nearby area. And, considering her age, background, and experience, Jewell's failure to inquire of every theoretical medically-related job—even when she knew there would be no openings—did not render her search unreasonable.

Second, the fact that, once employed by Rite-Aid, Jewell failed to leverage up into a full-time job was not unreasonable, either. It is not surprising that her interim employment—the only job she found—made it difficult to find a different full-time job. Though her burden to find meaningful employment did not suddenly evaporate when she took on part-time work, all that is required is a reasonable effort to search. Jewell satisfied that standard here. *See Lundy Packing Co. v. NLRB*, 856 F.2d 627, 629-30 (4th Cir. 1988).

Third, although Jewell "willfully" left her job at Rite-Aid, an unlawfully laid-off employee is not required to accept or remain in less desirable working conditions. *See*

*Westin*, 758 F.2d at 1129-30 (holding that the fact that a waitress quit a comparable job did not toll her backpay liability where the sinks at the new job backed up and flooded when it rained). For Jewell to have stayed with Rite-Aid after the other employees transferred in, she would have had to have driven seventy miles each way to get to and from work, all for a seven-dollar an hour job. Refusing that is reasonable.

Finally, Jackson Hospital argues that Jewell's search was inadequate for the five months after she left Rite-Aid until she retired. But the ALJ found that Jewell's search was reasonable under the circumstances (her husband had recently died), and we owe that finding deference. In any event, after her job search proved fruitless she retired and her backpay stopped shortly thereafter. And the ALJ completely agreed with Jewell's assessment of the reasonableness of her search: "Overall, there is no credible record evidence that disputes or contradicts Jewell's testimony." *Jackson Hosp.*, 353 N.L.R.B. at n.16. Thus, we enforce Jewell's backpay award.

### B.    *Debbie Miller*

Jackson Hospital argues that Miller's net award should have been offset by the amount of money she earned or was loaned from her trucking business. Jackson Hospital employed Miller as a phlebotomist until firing her in August 2000. She took interim employment with Central Kentucky Blood Center in January 2001, but voluntarily left that job in early 2002. She then got another job, this time with Appalachian Regional Healthcare, but left it to return to the Blood Center where she worked until it ceased operations in July 2004.

Miller also owned a trucking company from 1997 until 2004 that she inherited from her mother-in-law while still employed by Jackson Hospital. Miller's company employed a few drivers and her primary responsibility was to write payroll checks. She shut the company down in 2004 because it was no longer profitable. From the beginning, however, Miller received a salary and took out loans from the company. Both parties agree that the Board's general rule is that, during the backpay period, earnings or profits from a job or business that a discriminatee held during her employment are not deductible from gross backpay as interim earnings. *See Midwestern Pers. Servs.*, 346

N.L.R.B. 624, 635 n.6 (2007). The Board here determined that this income should not be used to offset Miller's backpay award because, after her unlawful discharge, her duties with her company did not change and her hours of work did not increase or decrease. The ALJ agreed: "Miller's testimony that she performed the same duties for the trucking company before and after her unlawful discharge is unrebutted." *Jackson Hosp. Corp.* 353 N.L.R.B. 33 (2008).

The ALJ did find that, during the backpay period, Miller took out slightly more funds from her company than she previously and she put a slightly greater share of her company's assets to personal use, including loans. Jackson Hospital observes that we do not know whether she paid these loans back. Jackson Hospital thus argues that this extra money should be counted against her backpay award. And the ALJ elaborately construed this extra work as "supplemental" income or "moonlighting," which, under Board precedent, does not offset a backpay award. *See Birch Run Welding & Fabricating, Inc.*, 286 N.L.R.B. 1316, 1318 (1987).

We see the matter differently than Jackson Hospital. Whatever money or unpaid loans Miller took from her company were not interim earnings because she was simply liquidating assets she already owned prior to her being fired. If someone had a large bank or retirement account and that person's unlawful firing forced them to liquidate a larger share of it to pay bills, we would not count that increase against a backpay award: it is not "interim income" of the kind earned when one finds new employment after having been unlawfully discharged. Because Miller's company's assets were limited—indeed, the company closed—the loans and income are irrelevant to her backpay and the rest of her job search. Thus, we enforce the Board's modified backpay award to Miller, though under somewhat different reasoning.

### C.     *Lois Noble*

Jackson Hospital argues that the Board and ALJ incorrectly determined that it made an invalid offer of reinstatement to Noble. "[A]n employer, having once offered reinstatement, is released from the back pay obligation from the date the offer was rejected." *Morvay v. Maghielse Tool & Die Co.*, 708 F.2d 229, 233 (6th Cir. 1983)

(quotations omitted). But "[t]he purpose of an offer to reinstate is to 'undo the employer's wrong by restoring the employees to the position they would have occupied before the wrong occurred.'" *Id.* (quoting *Ridgley Mfg. Co. v. NLRB*, 510 F.2d 185, 188 (D.C. Cir. 1975)). Thus, determining the sufficiency of a reinstatement offer has two steps: (1) there must be a genuine offer of full reinstatement that (a) "restore[s] seniority or other benefits accrued by the employee," (b) is permanent, and not temporary, and (c) gives the employee sufficient time to accept, *Morvay*, 708 F.2d at 232; *NLRB v. Seligman & Assoc's., Inc.*, 808 F.2d 1155, 1163-65 (6th Cir. 1986); and (2) this genuine offer of full and permanent reinstatement must be specific, unequivocal, and unconditional, *Seligman*, 808 F.3d at 1163.

The offer here fails this test because it was for temporary and not permanent employment. Further, the offer expressly stated that, were Jackson Hospital to win at a later stage in the litigation, it would fire her again. Treating such an offer as genuine and unconditional would contravene the Supreme Court's decree that "making [employees] whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." *Phelps Dodge,* 313 U.S. at 197. The offer here would not have made Noble "whole" because of its express limitations, and thus it was not a valid offer of reinstatement so Noble's rejection of it did not toll her back pay award. The ALJ and Board properly calculated her award and we enforce it.

### D.    Maxine Ritchie

Finally, Jackson Hospital contends that the Board's new rule for determining whether an employee was a statutory supervisor—as announced in *Oakwood Healthcare, Inc.*, 348 N.L.R.B. 37 (2006)—should have been applied retroactively to determine whether Ritchie was such a supervisor. In arguing this point, Jackson Hospital—who really raised the issue too late[3]—and the Board both appear to get the standard wrong:

---

[3]The question of whether or not Ritchie was a supervisor is a question about the merits of whether or not there was a violation in the first place; it is not a backpay issue. And we are barred from rehearing that question under *res judicata* principles because it was already decided by the D.C. Circuit, *Jackson Hosp. Corp. v. NLRB*, No. 04-1018, 2005 U.S. App. LEXIS 10450,(D.C. Cir. June 3, 2005), and we must respect that judgment.

they both argue that the question is whether applying *Oakwood*'s test retroactively would work a "manifest injustice" *on the Board*. Although the Board contends and—the ALJ agreed—that retroactive application of the *Oakwood Healthcare* standard would work a manifest injustice on it, Jackson Hospital has a point in asserting that it is bizarre to say that retroactive application of the Board's own rule would work such profound injustice on the Board. The larger problem is that this approach does not comport with the law of this Circuit.

Instead, this Court has simply stated that "unless manifest injustice can be shown, the Board's judgments on retroactivity should be upheld." *Adair Standish Corp. v. NLRB*, 912 F.2d 854, 866 (6th Cir. 1990) (quoting *Hickman Harbor Serv. v. NLRB*, 739 F.2d 214, 218 (6th Cir. 1984)). In other words, appellate review is confined to determining whether, after the Board has decided to apply a new standard retroactively or not, that decision would work a manifest injustice on the parties.

Applying that standard here is straightforward. Jackson Hospital has not shown that it suffered "manifest injustice" by the Board's not abiding by its "usual practice" of applying rules retroactively. There is no evidence of any detrimental reliance by Jackson Hospital in the expectation that it would and should benefit from retroactive application of the *Oakwood Healthcare* standard for determining whether an employee is a statutory supervisor. Moreover, neither can we say that the employee, Ritchie, suffered a manifest injustice either, and we thus agree with the Board's decision not to apply that rule retroactively, though for slightly different reasons than the Board and ALJ.

IV.

For the above reasons, we ENFORCE the Board's Order directing backpay to the four discriminatees.