RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NATIONAL LABOR RELATIONS BOARD,
      *Petitioner*,

  *v.*

No. 10-2101

JACKSON HOSPITAL CORPORATION, d.b.a.
Kentucky River Medical Center,
      *Respondent*.

On Application for Enforcement of an Order of the
National Labor Relations Board.
Nos. 9-CA-38468; 9-CA-38237; 9-CA-38084-2; 9-CA-38084-1; 9-CA-37875;
9-CA-37796; 9-CA-37795-2;1 9-CA-37795-1; 9-CA-37734.

Decided and Filed: January 31, 2012

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Renée D. McKinney, Usha Dheenan, Linda Dreeben, NATIONAL
LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. Bryan T. Carmody,
Glastonbury, Connecticut, for Respondent.

_____

## OPINION

_____

  BOYCE F. MARTIN, JR., Circuit Judge. In a previous proceeding, the National
Labor Relations Board found that respondent Jackson Hospital Corporation, which does
business as Kentucky River Medical Center, violated the National Labor Relations Act,
29 U.S.C. § 158(a)(1), (3) when it fired eight employees because of their union support

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio,
sitting by designation.

and participation in a lawful strike. *Jackson Hosp. Corp.*, 340 N.L.R.B. 536 (2003), *enforced* No. 04-1019, 2005 U.S. App. LEXIS 10450 (D.C. Cir. June 3, 2005). The Board now seeks to enforce its Supplemental Decision and Order directing Jackson Hospital to pay back pay to one of the eight discriminatees, Melissa Turner. We **ENFORCE** the Board's Order.

## I.

In 2000, before a collective-bargaining agreement could be reached between Jackson Hospital and the United Steelworkers, which represented this unit of Jackson Hospital's employees, the employees went on strike. Following reports of discrimination in retaliation for the strike, the National Labor Relations Board's General Counsel issued a complaint alleging that Jackson Hospital had engaged in unfair labor practices. The administrative law judge held that Jackson Hospital had unlawfully discharged eight employees because of their union support and participation in the strike. The Board affirmed those findings and the United States Court of Appeals for the District of Columbia Circuit enforced the Order. *Id.*

After the D.C. Circuit enforced the Order in 2005, Jackson Hospital did not comply with the Order with respect to Turner. On May 25, 2007, the Board issued an amended second compliance specification. In response, Jackson Hospital admitted it had not paid or reinstated Turner and argued that its liability for back pay should be tolled. The administrative law judge heard the case in July and October and found Turner was owed back pay of $79,577, plus interest. The Board affirmed the administrative law judge's rulings, findings, and conclusions, with modifications, on July 9, 2009, in a Supplemental Decision and Order. *Jackson Hosp. Corp.*, 354 N.L.R.B. No. 42 (2009). The Order was set aside after the Supreme Court's decision in *New Process Steel, L.P. v. NLRB*, 130 S.Ct. 2635 (2010). The Board again considered the administrative law judge's decision and adopted it for the same reasons set forth in the 2009 Supplemental Decision and Order. *Jackson Hosp. Corp.*, 355 N.L.R.B. No. 114 (2010).

The Board filed its application for enforcement of its Order before this Court.

**II.**

Jackson Hospital challenges the enforcement of the Board's Order, arguing that: (1) the Board erred in finding that Turner's felony conviction had no impact on her right to reinstatement and back pay; (2) the Board erred in finding that Turner's resignation from an interim job did not toll Jackson Hospital's back pay liability; and (3) the Board erred in finding that Turner's medical leave did not terminate Jackson Hospital's back pay liability.

When the Board finds that an employer has engaged in an unfair labor practice, section 10(c) of the National Labor Relations Act compels it "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the [Act's] policies." 29 U.S.C. § 160(c). The Board's remedial power is "a broad, discretionary one, subject to limited judicial review." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (citation omitted). As a result, we may not disturb a Board order "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *NLRB v. Overseas Motors, Inc.*, 818 F.2d 517, 520 (6th Cir. 1987) (quoting *Fibreboard*, 379 U.S. at 216) (internal quotation marks omitted). Thus, the question is "whether the Board has abused its discretion in fashioning its remedial order." *NLRB v. Joyce W. Corp.*, 873 F.2d 126, 128 (6th Cir. 1989) (citation and internal quotation marks omitted).

Specifically, where the Board must determine the amount of an employer's liability to an employee for the unfair labor practice of discharge for engaging in protected activity, "[t]he General Counsel has a duty only to show the gross amount of back pay due." *Overseas Motors*, 818 F.2d at 521. Once gross back pay—"the amount of money that the employee would have earned had the employer not violated the National Labor Relations Act" —has been established, "the burden is on the employer to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability." *Id.* (quoting *NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir. 1968)). "[T]he Board's conclusion as to whether an [employer has met this burden] will be overturned on appeal only if the record, considered in its entirety, does

not disclose substantial evidence to support the Board's findings." *NLRB v. Westin Hotel*, 758 F.2d 1126, 1130 (6th Cir. 1985) (citation omitted); *see also NLRB v. Velocity Express, Inc.*, 434 F.3d 1198, 1201 (10th Cir. 2006) ("Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and internal quotation marks omitted); *TNS, Inc. v. NLRB*, 296 F.3d 384, 394-95 (6th Cir. 2002).

A.    Turner's Felony Conviction

Turner was convicted in November 2002 for the felony of attempting to solicit a controlled substance by fraud.   Jackson Hospital argues that Turner's rights to reinstatement and back pay  terminated upon this conviction, and that the Board erred in finding they did not.

The felony conviction stemmed from Turner's attempt to obtain Demerol for a toothache by untruthfully denying she had received Percocet for the same ailment earlier that day.  Jackson Hospital argues that it would have terminated Turner for her felony conviction or for substance abuse.  The administrative law judge found, and the Board agreed, that in the past Jackson Hospital had continued employment of a felon and dozens of substance abusers.  Specifically, Jackson Hospital had continued the employment of an employee, Carol Hudson, who was convicted of the felony of concealing her husband's marijuana operation while she was a Jackson Hospital employee.   Jackson Hospital also continued employment of substance-abusing employees.  In fact, Jackson Hospital had an Employee Assistance Program designed to help employees with substance-abuse problems.

Further, as the Board notes, Turner's situation is different from, but is not undercut by, these examples because her termination occurred two years before the felony conviction.   Jackson Hospital claims its leniency in continuing Hudson's employment after her felony conviction owed to close communication with Hudson's attorney and probation officer; Turner did not contact Jackson Hospital to discuss continued employment because Turner was not employed by Jackson Hospital at the time of the felony.  Similarly, Jackson Hospital argued that substance-abusing employees

in the Employee Assistance Program were allowed to continue employment because they voluntarily submitted to the program; Turner had no opportunity to submit to the program because, again, she was not employed by Jackson Hospital at the time of her misconduct.

Finally, the administrative law judge found, and the Board noted, that Turner's work as an X-ray technician did not afford her access to controlled substances, and that Jackson Hospital closely monitored controlled substances in the hospital. These facts undercut Jackson Hospital's argument that it would not have continued to employ Turner after her conviction based on concerns about her potential future abuse of controlled substances present at the hospital.

We conclude that the Board did not abuse its discretion in its conclusions regarding Turner's felony conviction, and that substantial evidence supports the Board's conclusion that Jackson Hospital did not meet its burden to negate back pay or reinstatement liability.

### B.      Turner's Resignation from Interim Employment

Turner was employed as a radiology technologist at Gram Resources from October 2001 until July 2002, when she resigned. Jackson Hospital argues as an affirmative defense to its back pay liability that Turner's resignation amounts to a "willful loss of earnings" that should result in tolling its back pay liability.

Jackson Hospital is correct that where an employee suffers a "willful loss of earnings," the employer's back pay liability is tolled. *NLRB v. Ryder Sys., Inc.*, 983 F.2d 705, 712 (6th Cir. 1993) (citing *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 199-200 (1941)). However, a willful loss of earnings will be found only where "the employee's misconduct was 'gross' or 'egregious.'" *Id.* at 713.

The administrative law judge found that Turner resigned from Gram because her work hours increased to the point where they became incompatible with the demands of caring for her child, and that this resignation did not affect subsequent back pay owed her. The Board adopted the administrative law judge's findings. Jackson Hospital

argues that Turner resigned to preempt her being fired, but the administrative law judge found otherwise. Our review of the facts indicates that there is "substantial evidence to support the Board's findings," *Westin Hotel*, 758 F.2d at 1130, including evidence that Turner's increased working hours made providing child care burdensome. Jackson Hospital cites conflicting testimony by Ken Holbrook, a Gram administrator, to support its argument that Turner anticipated an impending termination and resigned preemptively. The Board concluded that "the [administrative law judge] implicitly discredited Holbrook's testimony by finding that Turner quit because of childcare issues and did not know at the time that Holbrook intended to fire her." *Jackson Hosp. Corp.*, 354 N.L.R.B. No. 42, at *2. "[T]his Court will not normally substitute its judgment for that of the Board or administrative law judge who has observed the demeanor of the witnesses." *NLRB v. Lakepark Indus., Inc.*, 919 F.2d 42, 44 (6th Cir. 1990) (citation omitted). We decline to substitute our judgment here.

Resigning from a position incompatible with child care duties is not the sort of gross or egregious conduct necessary to find a willful loss of earnings. We conclude that the Board did not abuse its discretion in its findings and conclusions on this point. Substantial evidence supports the Board's conclusion with respect to Jackson Hospital's failure to meet its burden in negating back pay liability based on Turner's resignation from her interim job.

C.     Turner's Medical Leave

Turner took medical leave from interim employment at Clark Regional Medical Center because of pregnancy complications and postpartum recovery from October 28, 2005 through June 25, 2006. Jackson Hospital contends that, because the leave exceeds the leave required by the Family and Medical Leave Act and any additional leave allowed by Jackson Hospital's own leave policies and its past application of its leave policies, Turner's medical leave would have resulted in her termination, thus ending Jackson Hospital's liability for back pay.

The administrative law judge did not address Jackson Hospital's medical leave defense. The Board considered this defense and concluded that Turner is not entitled to

back pay during the leave period but that the leave itself did not relieve Jackson Hospital of further liability for back pay. This leave exceeded the twelve weeks of leave legally protected by the Family and Medical Leave Act. To determine whether Jackson Hospital would have terminated Turner once her leave exceeded twelve weeks, the Board examined Jackson Hospital's leave policy and considered testimony from David Bevins, Jackson Hospital's former CEO. The Board determined, *Jackson Hosp. Corp.*, 354 N.L.R.B. No. 42 at 4-5, that though "there are material tensions between Bevins's testimony and [Jackson Hospital's] written leave policy" and

> neither the written policy nor Bevins's testimony clearly addresses the procedures, conditions, or possible duration of [Family and Medical Leave Act] leave extensions or the use of personal leaves to supplement [Family and Medical Leave Act] or other leave, the record does not preclude the possibility that Turner may have been eligible for an extended leave that could have lasted for as long as her incapacity, and thus for reinstatement upon obtaining medical clearance.

Jackson Hospital points to Bevins's testimony that Jackson Hospital had never retained an employee who took medical leave for eight months. While that may be true, Jackson Hospital's written leave policy does not foreclose the possibility of an eight-month leave. As the Board notes, the written policy leaves open the possibility that an employee could extend her leave by either extending her leave under the Act or by taking a "personal leave of absence." Though the written policy is not clear on all points, the burden rests with Jackson, and not Turner, to prove that Jackson Hospital would have refused to reinstate Turner because of her medical leave. The Board concluded that Jackson Hospital did not meet this burden. We find that substantial evidence supports this conclusion, and that the Board did not abuse its discretion in fashioning its Order on this point.

## III.

For the above reasons, we **ENFORCE** the Board's Order.